EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pablo Pons Anca y otros<br><br>        Recurridos<br><br>                v.<br><br> Carl R. Engebretson<br>y otros<br><br>        Peticionarios | Certiorari<br><br>2003 TSPR 150<br><br>160 DPR _____ |

Número del Caso: CC-2001-274


Fecha: 30 de septiembre de 2003


Tribunal de Circuito de Apelaciones:
                        Circuito Regional II


Panel integrado por su Presidente, Juez Sánchez Martínez, la Jueza
Ramos Buonomo y la Jueza Cotto Vives


Abogados de la Parte Peticionaria:
                        Lic. Amancio Arias Guardiola
                        Lic. Marylin Aponte Nieves


Abogados de la Parte Recurrida:
                        Lic. Francisco J. Ortiz García
                        Lic. Paul E. Calvesbert Borgos


Materia: Daños y Perjuicios



Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correcciones del proceso
de compilación y publicación oficial de las decisiones del
Tribunal. Su distribución electrónica se hace como un servicio
público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pablo Pons Anca y otros

     Recurridos

          v.

                             CC-2001-274

Carl R. Engebretson
y otros

     Peticionarios

Opinión del Tribunal emitida por la Jueza Asociada señora NAVEIRA DE RODÓN

San Juan, Puerto Rico a 30 de septiembre de 2003

Nos corresponde determinar si, a la luz de los hechos del recurso ante nos, el empleador de un contratista independiente debe responder por los daños y perjuicios ocasionados por la negligencia de dicho contratista en el desempeño de su labor. Respondemos en la negativa.

A continuación exponemos el trasfondo fáctico del presente recurso, según surge de autos.

I

En agosto de 1994 el Dr. Pedro Rullán contrató los servicios del Sr. Carl R. Engebretson, h/n/c Bob's Tree Service, para cortar dos (2) palmas

reales de sesenta pies de altura ubicadas frente a su residencia en la Urbanización Breñas Estates en Dorado. Las palmas colindaban con la carretera principal de la urbanización, la cual no contaba con aceras. El señor Engebretson se había dedicado al negocio de la poda y corte de árboles por veinticinco (25) años y contaba con vehículos y el equipo necesario para llevar a cabo el trabajo. Durante este tiempo había cortado diez mil (10,000) árboles aproximadamente, de los cuales doscientos (200) eran palmas reales. El señor Engebretson, además, contaba con algunos ayudantes, entre ellos el Sr. José Semprit, quien estuvo a cargo del trabajo encomendado por el doctor Rullán.

El día antes de llevar a cabo el trabajo, el señor Engebretson se personó a la residencia del doctor Rullán para inspeccionar las palmas y determinar la forma en la cual serían cortadas, así como cualquier medida de seguridad particular que fuera necesaria. Luego de examinar el área pactó con la Sra. Nilda Lydia Oliver de Rullán, esposa del doctor Rullán, el precio de doscientos cincuenta dólares ($250.00) por cada palma y por la limpieza del lugar. Las labores comenzaron el 17 de agosto de 1994, aproximadamente a las 9:00 a.m. En vista de su experiencia de quince (15) años cortando árboles, el señor Semprit estuvo a cargo de cortar las palmas. Para ello utilizó una escalera, unas espuelas, un cinturón y una sierra mecánica. Comenzó cortando las

pencas y luego el tronco en trozos de doce (12) pulgadas. Mientras el señor Semprit cortaba las palmas, el señor Engebretson vigilaba que los transeúntes no se acercaran al área y recogía los desperdicios junto a otro ayudante.

Después de cortar la primera palma, el señor Engebretson y sus ayudantes decidieron tomar un descanso. Apoyaron la escalera que estaban utilizando sobre la segunda palma a ser cortada. La escalera medía cuarenta (40) pies de largo aproximadamente. Los trabajadores no amarraron ni fijaron de forma alguna la escalera a la palma. Mientras el señor Engebretson y sus ayudantes se encontraban descansando, un grupo de niños vecinos de la urbanización pasó por la carretera principal en dirección a la playa luego de notar que las labores estaban detenidas. En el grupo se encontraba la menor Miriam Pons Morales, quien al momento de los hechos tenía once (11) años de edad y era vecina del doctor Rullán. Miriam había estado en la residencia de una vecina viendo una película, pero salió en bicicleta a buscar a otros niños para jugar en vista de que los trabajos en la residencia del doctor Rullán estaban detenidos.

Cuando Miriam iba de regreso junto a los niños, unos minutos más tarde, volvió a pasar por el área de trabajo mientras el señor Engebretson y sus ayudantes aún estaban disfrutando del descanso. En esos instantes, la escalera se deslizó desde la palma hasta la carretera, cayendo sobre Miriam y golpeándola en la cabeza y en la espalda.

La menor fue trasladada de inmediato al Hospital Auxilio Mutuo donde determinaron que había sufrido un trauma en la espalda que ocasionó una fractura en la vértebra lumbar número uno (1). Como resultado de la fractura, sufrió una pérdida de rotación lateral y de diez (10) grados de flexión en la cadera y el encogimiento del complejo de músculos isquiotibiales y gastrosoleo. Esta lesión provocó que Miriam desarrollara una condición permanente en la espalda conocida como disco abultado (*buldging disk*), la cual podría degenerar eventualmente en un disco herniado.

Además, la menor sufrió una laceración profunda del cuero cabelludo y una leve fractura del cráneo. El accidente también le produjo una laceración profunda en el mentón con comunicación intraoral, es decir, la herida atravesó las capas de su piel y se conectó con la cavidad bucal. El proceso de recuperación de la herida en el mentón precisó que Miriam utilizara un aditamento en su cabeza para ayudar a la cicatrización (*chin strap*) ya que desarrolló queloide en la herida. La menor quedó con una cicatriz permanente en el mentón.

Por los hechos antes reseñados, el 16 de agosto de 1995 la Sra. Maritza Morales López y el Sr. Pablo Pons Anca presentaron una demanda por daños y perjuicios, por sí y en representación de la sociedad legal de gananciales compuesta por ambos y de sus hijas menores de edad Miriam Pons Morales y Sylvia Pons Morales, contra el

señor Engebretson y Royal Insurance Company of Puerto Rico, Inc. (en adelante Royal), aseguradora del doctor Rullán. El señor Engebretson reconvino y, a su vez, presentó una demanda contra tercero contra el doctor Rullán. Este último presentó una demanda contra tercero contra su aseguradora, Royal. El 13 de mayo de 1997 los padres de la menor enmendaron la demanda a los efectos de incluir una causa de acción directa contra Royal.

Luego de varios incidentes procesales y de recibir abundante prueba testifical, el tribunal de instancia emitió sentencia el 9 de diciembre de 1999. Determinó que el señor Engebretson y el doctor Rullán fueron negligentes por no tomar las precauciones necesarias para impedir el paso de peatones por la carretera principal. En consecuencia, los responsabilizó junto a Royal por los daños físicos y los sufrimientos y angustias mentales ocasionados a la menor y su familia. El tribunal sentenciador concedió a la menor la suma de setenta y cinco mil dólares ($75,000.00) por los daños físicos y angustias mentales sufridos como consecuencia del incidente. Además, dicho foro concedió a cada uno de sus padres la suma de diez mil dólares ($10,000.00) y cinco mil dólares ($5,000.00) a su hermana por sus sufrimientos y angustias mentales. Finalmente, concedió a los demandantes la suma de mil seiscientos dólares ($1,600.00) por daños especiales, entre los que se encuentran deducibles del plan médico, medicamentos y

hospitalización, entre otros, e impuso la obligación de pagar la suma de cinco mil dólares ($5,000.00) por honorarios de abogado. De otra parte, el foro sentenciador desestimó la reconvención y la demanda contra tercero instada por el señor Engebretson contra los padres de la menor y contra el doctor Rullán.

Royal y el doctor Rullán solicitaron la revisión del anterior dictamen ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). Adujeron que los daños sufridos por la menor y su familia fueron ocasionados exclusivamente por la negligencia del señor Engebretson en el desempeño de su labor y que la madre de la menor también había sido negligente al no supervisar adecuadamente a su hija. El foro apelativo emitió sentencia el 28 de febrero de 2001 confirmando al tribunal de instancia. Resolvió que era previsible que la escalera en uso y pedazos de palma cayeran sobre alguna persona que estuviera cerca del área de trabajo y, por tanto, era necesario que el señor Engebretson y el doctor Rullán tomaran medidas especiales para evitar tales daños.[1] Con relación a la negligencia de la madre de la menor, determinó que la ausencia de supervisión no fue un factor que contribuyera al daño sufrido por ésta.

---

[1] El tribunal apelativo, además, modificó la sentencia para aclarar que el interés a pagar por la indemnización concedida sería de 10.5%.

Inconformes, Royal y el doctor Rullán acudieron ante nos mediante recurso de *certiorari* donde aducen que el foro apelativo incidió:

> [A]l sostener la imposición de negligencia a Rullán y a su aseguradora [Royal].

> [A]l sostener que la madre de la menor, la codemandante [recurrida] Maritza Morales López, no incurrió en negligencia comparada.

> [A]l sostener la determinación de temeridad contra Rullán y a [sic] su aseguradora [Royal].

El 4 de mayo de 2001 expedimos el auto solicitado. Las partes han comparecido y con el beneficio de sus argumentos procedemos a resolver.

II

Sabido es que en nuestro ordenamiento jurídico la responsabilidad civil extracontractual emana esencialmente del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, al disponer que "[e]l que por acción u omisión causa daño a otro, está obligado a reparar el daño causado". Para que prospere una reclamación de esta naturaleza, es necesario que se lleve a cabo una actuación u omisión culposa o negligente; que ocasione un daño y que exista una relación causal entre la acción u omisión y el daño ocasionado. *Mun. de San Juan v. Bosque Real S.E.*, res. el 4 de marzo de 2003, 158 D.P.R. _____ (2003), 2003 T.S.P.R. 31, 2003 J.T.S. 33; *Valle Izquierdo v. Estado Libre Asociado*, res. el 14 de mayo de 2002, 157

D.P.R. _____ (2002), 2002 T.S.P.R. 64, 2002 J.T.S. 70; *Hernández v. Fournier*, 81 D.P.R. 93, 96 (1957).

Las omisiones solamente dan lugar a una causa de acción cuando existe un deber de actuar. José Castán Tobeñas, *Derecho civil español, común y foral*, Tomo IV, 15ta ed., Reus, 1993, pág. 942, nota 1. La imposición de responsabilidad descansa en el deber de las personas de subordinar sus acciones a las reglas de la prudencia, de manera que si se actúa de forma contraria a éstas, surge la obligación de indemnizar al perjudicado. Carlos J. Irizarry Yunqué, *Responsabilidad civil extracontractual*, 5ta ed., 2003, pág. 56. De lo anterior se colige un deber general de diligencia cuyo empleo puede evitar el resultado dañoso. *Jiménez v. Pelegrina Espinet*, 112 D.P.R. 700, 704 (1982).

Un elemento esencial de la responsabilidad aquiliana es el factor de la previsibilidad y el riesgo involucrado en la situación particular. El deber de cuidado incluye la obligación de anticipar así como de evitar el daño. Si el daño es previsible, habrá responsabilidad; si no lo es, generalmente estaremos ante un caso fortuito. *Jiménez v. Pelegrina Espinet, supra*, pág. 704. Sin embargo, **"[n]o es necesario que la persona que haya obrado de manera negligente haya podido imaginar de manera precisa todas las consecuencias de su conducta"**. José Puig Brutau, *Compendio de Derecho civil*, Vol. II, 3era ed., Bosch, 1997, pág. 634. (Énfasis suplido.) Lo

esencial es que exista un deber de prever, de forma general, las consecuencias de determinada clase. *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294, 309 (1990); *Ginés Meléndez v. Autoridad de Acueductos*, 86 D.P.R. 518, 524 (1962). Para determinar si el resultado era razonablemente previsible, es preciso acudir a la figura del hombre prudente y razonable, que es aquella persona que actúa con el grado de cuidado, diligencia, vigilancia y precaución exigidos por las circunstancias. *Monllor Arzola v. Soc. de Gananciales*, 138 D.P.R. 600, 604 (1995).

De otra parte, para que pueda imponerse responsabilidad por el daño ocasionado es necesario que exista una relación causal entre el daño y la acción u omisión negligente. En esta determinación nos hemos regido por la teoría de la causalidad adecuada, que postula que "[n]o es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general". *Soc. de Gananciales v. Jerónimo Corp.*, 103 D.P.R. 127, 134 (1974). Conforme con lo anterior, un daño podrá ser considerado como el resultado probable y natural de un acto u omisión negligente si luego del suceso, mirándolo retroactivamente, el daño parece ser la consecuencia razonable y común de la acción u omisión. *Montalvo v. Cruz,* 144 D.P.R. 748, 756-757 (1998). "El Juez debe establecer un pronóstico retrospectivo de probabilidad,

preguntándose si la acción que se juzga era por sí sola apta para provocar normalmente esa consecuencia". Castán Tobeñas, *supra*, págs. 967-968.

Por tratarse el recurso de marras de la negligencia de un contratista independiente, el señor Engebretson, mientras llevaba a cabo las labores encomendadas por el empleador, el doctor Rullán, examinaremos la norma de responsabilidad aplicable en tales circunstancias, según expuesta por nuestra jurisprudencia.[2] La responsabilidad impuesta a un empleador por los daños ocasionados por un contratista independiente constituye una excepción a la norma a los efectos de que la obligación de reparar daños generalmente emana de un hecho propio. Nuestro ordenamiento únicamente impone responsabilidad por hechos ajenos de manera excepcional. Arts. 1802 y 1803 del Código Civil, 31 L.P.R.A. secs. 5141 y 5142.

La condición de contratista independiente, por sí sola, no releva al principal que emplea al contratista de responder por los daños que el primero haya causado. *López v. Cruz Ruiz*, 131 D.P.R. 694, 704 (1992). En *Martínez v. Chase Manhattan Bank*, 108 D.P.R. 515, 521-523 (1979), expusimos la norma aplicable a estas circunstancias. En lo pertinente, indicamos que:

> Un empleador responde por daños que debió anticipar al tiempo de contratar y no puede

---

[2] Con relación a los factores que deben considerarse para dilucidar si una persona se desempeña como contratista independiente, véase *Hernández v. Trans Oceanic Life Ins. Co.*, res. el 30 de junio de 2000, 151 D.P.R. _____ (2000), 2000 T.S.P.R. 115, 2000 J.T.S. 125.

eludir responsabilidad pasándola al contratista. La excepción a la regla de indemnidad del principal por actos del contratista independiente, se da en trabajo arriesgado en ausencia de precauciones especiales. La persona que emplea un contratista independiente, para hacer trabajo que el empleador debe reconocer como propenso a crear durante su desarrollo un riesgo peculiar de daño a tercero a menos que se tomen precauciones especiales, está sujeta a responsabilidad por el daño causado por razón de no haberse cuidado el contratista de tomar tales precauciones, aun cuando el empleador las hubiese ordenado en el contrato o por cualquier otro medio.

. . . .

**El empleador del contratista no responde por la negligencia corriente de éste que resulte en daño para tercera persona, ni por su inobservancia de precauciones de rutina que un contratista cuidadoso debe usualmente tomar. La responsabilidad del empleador gira en torno a 'riesgos especiales, peculiares al trabajo que deba realizarse y que surgen de su naturaleza o del sitio donde deba realizarse, contra los cuales un hombre razonable reconocería la necesidad de tomar precauciones especiales**.... Peculiar no quiere decir que sea un riesgo anormal en ese tipo de labor o que ha de ser un riesgo anormalmente grande. Se refiere sólo a un peligro especial y conocible que se da en esa clase de trabajo'. (Énfasis suplido y citas omitidas.)

Al interpretar la norma antes citada, en *López v. Cruz Ruiz, supra*, pág. 706, señalamos que el empleador solamente responderá por su propia culpa o negligencia en aquellos casos en que deje de tomar medidas de precaución especiales en atención a los riesgos particulares de una obra y tal omisión provoque daños a terceras personas. Además, **será necesario que los daños hayan sido previsibles para el empleador**. *Id.* De hecho, a la luz del criterio de previsibilidad, en la citada decisión de

*López v. Cruz Ruiz*, *supra*, rehusamos imponer responsabilidad al Municipio de Cataño por la negligencia del conductor de un camión contratado por éste para realizar labores de limpieza en un solar yermo. El conductor del camión impactó a una menor, que iba en una bicicleta. Resolvimos que los daños sufridos por la menor fueron provocados por la negligencia del conductor al no tomar las precauciones necesarias para conducir un vehículo de motor por un área cercana a una escuela elemental y a un parque. El daño provocado se debió a la inobservancia de las precauciones de rutina que debe tomar el conductor de un vehículo de motor. La falta de precaución del conductor no era previsible para el Municipio, por tanto, desestimamos la demanda en cuanto a éste. *Id.*, págs. 708-709.

Entendemos que la adecuada interpretación de la norma de responsabilidad para los empleadores de contratistas independientes, según enunciada en *Martínez v. Chase Manhattan Bank, supra*, y aplicada en *López v. Cruz Ruiz, supra*, debe ser que el empleador no debe responder por la negligencia del contratista cuando ésta consista en omitir las medidas de cuidado rutinarias para llevar a cabo la labor que le ha sido encomendada. Tampoco debe imponérsele responsabilidad al empleador cuando la falta de cuidado del contratista independiente no era previsible para el principal.

De otra parte, cuando se trate de una obra que por su naturaleza implique riesgos particulares, el empleador será responsable por la negligencia del contratista si omite exigirle en el contrato tomar las medidas de seguridad especiales que sean necesarias o, en caso de no incluirlas en el contrato, si el empleador no ejerce la debida diligencia para tomar por sí mismo tales medidas de alguna forma. A manera ilustrativa, este Tribunal ha determinado que las labores relacionadas con la energía eléctrica y con el manejo de sustancias inflamables conllevan riesgos especiales que requieren un alto grado de cuidado. *Pacheco v. A.F.F.*, 112 D.P.R. 296 (1982); *Vda. de Delgado v. Boston Insurance Co.*, 99 D.P.R. 714 (1971). Ahora bien, como no se trata de una norma de responsabilidad absoluta, no es necesario que se prevean todos los riesgos probables que pueda generar la actividad.

Finalmente, el empleador no debe responder por la negligencia del contratista independiente cuando ejerza la debida diligencia para asegurarse que la persona contratada cuenta con las destrezas y experiencia suficientes para llevar a cabo el trabajo, por lo que es de esperar que tomará las medidas de precaución necesarias para evitar los riesgos que pueda ocasionar la obra. En tales circunstancias, se entenderá que el empleador ha actuado como un hombre prudente y razonable al delegar las labores en una persona capacitada para

llevar a cabo el trabajo. Estimamos que estos principios regirán más justamente la relación entre principal y contratista independiente en reclamaciones por daños y perjuicios ocasionados a terceras personas ya que una aplicación contraria equivaldría a la imposición de responsabilidad absoluta al principal por la negligencia del contratista.

De otra parte, aunque en Puerto Rico la responsabilidad civil extracontractual se rige tanto en su forma como en su contenido por el derecho civil, *Valle v. Amer. Inter. Ins. Co.*, 108 D.P.R. 692, 695 (1979), a manera persuasiva, cabe señalar que en la jurisdicción federal también se ha acogido la limitación de responsabilidad del principal por la negligencia de un contratista independiente. De esta forma se exonera de responsabilidad al principal cuando la negligencia del contratista consiste en llevar a cabo labores rutinarias de forma descuidada; cuando el riesgo creado no es inherente al trabajo; y cuando la negligencia del contratista no era previsible para el empleador al momento de contratarlo. Restatement of the Law Second of Torts, sec. 426 (1965). Además, el empleador será responsable por su propia negligencia cuando el trabajo sea uno que implique riesgos particulares que requiera precauciones especiales y no ejerza su deber de exigirle al contratista tomar tales medidas o deje de tomarlas por sí mismo de alguna forma. *Id.*, sec. 413.

Examinemos los hechos ante nos, a la luz de las anteriores normas.

III

El doctor Rullan contrató los servicios del señor Engebretson, h/n/c/ Bob's Tree Service, para cortar dos (2) palmas reales que estaban ubicadas frente a su residencia en la carretera principal de la Urbanización Breñas Estates. Debido a que las palmas estaban ubicadas en una zona bastante transitada y a que medían sesenta (60) pies de altura, el doctor Rullán decidió contratar los servicios del señor Engebretson ya que éste contaba con veinticinco (25) años de experiencia cortando árboles. El señor Engebretson declaró que en sus años de experiencia había cortado aproximadamente diez mil (10,000) árboles, de los cuales doscientos (200) eran palmas reales.[3] Además, contaba con el equipo necesario para llevar a cabo el trabajo, que incluía escaleras, sogas y podadoras en varios tamaños.[4] De acuerdo con el testimonio de la señora Oliver de Rullán, el día anterior al acordado para llevar a cabo el trabajo el señor Engebretson acudió a la residencia para inspeccionar el área, ver las palmas, determinar el método que

---

[3]    Transcripción de la vista en su fondo, 23 de septiembre de 1999, págs. 99-100.

[4]    *Id.*

utilizarían para cortarlas y pactar el precio de la obra.[5]

El corte de las palmas fue delegado al señor Semprit por su experiencia de quince (15) años realizando tales labores. Éste utilizó una escalera de aproximadamente cuarenta (40) pies de altura. Durante el corte de la primera palma los trabajos transcurrieron normalmente. Para asegurarse que nadie resultara lesionado, el señor Semprit comenzó cortando las pencas mientras el señor Engebretson y el otro ayudante vigilaban que los transeúntes no se acercaran y recogían los desperdicios. Luego cortó el tronco en trozos de doce (12) pulgadas aproximadamente para evitar que alguna persona resultara lesionada al golpearse con algún pedazo, según surge de los testimonios del señor Semprit y de la señora Oliver de Rullán.[6]

Sin embargo, al finalizar de cortar la primera palma el señor Engebretson, el señor Semprit y el ayudante tomaron un descanso. Antes de descansar decidieron recostar la escalera de la segunda palma. De acuerdo con la declaración del señor Engebretson, los tres (3) hombres que estaban trabajando tuvieron que ayudar para poder trasladar la escalera.[7] Luego de recostarla, tomaron el descanso. Como la palma era más alta que la

---

[5]    *Id.*, pág. 134.

[6]    *Id.*, págs. 86, 136-137.

[7]    Transcripción de la vista en su fondo, 21 de septiembre de 1999, pág. 39.

escalera, en lugar de quedar en una posición diagonal, quedó recostada en una forma vertical. A pesar de no estar completamente recostada, los trabajadores no amarraron la escalera a la palma. Incluso el señor Engebretson testificó que no le sugirió al señor Semprit que amarrara la escalera.[8] Luego de varios minutos, un grupo de niños, entre los que se encontraba Miriam, pasó por el lugar y la escalera cayó sobre ella y la golpeó.

De los hechos reseñados se puede colegir que el empleador, doctor Rullán, actuó como un hombre prudente y razonable al desplegar la diligencia necesaria para contratar a una persona experimentada en el corte y poda de árboles, que contaba con los conocimientos sobre los métodos para llevar a cabo el trabajo y con el equipo requerido para las labores. De ordinario, el corte de un árbol o de una palma no conlleva riesgos particulares que requieran que se tomen medidas de seguridad especiales, por lo cual el doctor Rullán descargó su responsabilidad al contratar a una persona apta para la obra. El señor Engebretson, como parte de sus labores rutinarias, utilizó una escalera para cortar las palmas y la recostó de una de éstas sin fijarla de forma alguna para evitar que pudiera caerse sobre algún transeúnte o sobre algún automóvil y ocasionara daños. Cabe señalar que la escalera fue dejada sin supervisión inmediata ya que los

---

[8]    *Id.*, págs. 41-42.

trabajadores estaban descansando mientras ocurrió el accidente.

Para el doctor Rullán no era previsible que una persona, dedicada por más de veinticinco (25) años a cortar árboles y que había cortado más de diez mil (10,000), cometiera la negligencia de recostar una escalera de una palma sin sujetarla y que, además, la dejara sin supervisión. El señor Engebretson actuó negligentemente en el desempeño de las labores rutinarias que formaban parte de su trabajo y, por ende, no procedía imponer responsabilidad al doctor Rullán y a Royal por los daños sufridos por la menor y su familia que, aunque lamentables, no pueden ser atribuidos al empleador. Resolvemos que erró el Tribunal de Circuito al imponer responsabilidad al doctor Rullán y a su aseguradora Royal.

IV

En su segundo señalamiento de error la parte peticionaria alega que incidió el foro apelativo al determinar que la madre de la menor no actuó de forma negligente. De entrada, es preciso señalar que los padres y madres tienen un deber de ejercer vigilancia sobre los hijos menores de edad, de disciplinarlos y de proveerles una educación y un ambiente adecuados. *Cruz v. Rivera*, 73 D.P.R. 682, 686 (1952). Se requiere de

éstos que ejerciten el grado de cuidado necesario para la seguridad de sus hijos e hijas. *Berenguer López v. Gov. Employees Ins. Co.*, 90 D.P.R. 478, 485 (1964). Una determinación a los efectos que la madre de la menor, la señora Morales López, contribuyó con su negligencia a los daños sufridos por su hija surtiría el efecto de hacer aplicable la defensa de negligencia comparada. Esta defensa, estatuida en la segunda oración del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, produce la reducción de la indemnización en proporción al grado de negligencia del demandante.[9]

Con el beneficio de la discusión en el acápite II sobre los elementos para imponer responsabilidad civil extracontractual, examinemos la conducta de la madre de la menor para determinar si actuó de forma negligente. El día de los hechos Miriam se encontraba en la residencia de una vecina viendo películas con otros niños previa autorización de su madre. Mientras se cortó la primera palma Miriam permaneció en dicha residencia. Una vez los trabajadores recostaron la escalera de la segunda palma y tomaron un descanso, Miriam salió a la carretera junto a otros niños. Aunque Miriam no estaba acompañada por su madre, tal conducta es razonable para una niña de

---

[9] Los padres y madres, además, están obligados a responder por los daños ocasionados por sus hijos menores de edad que vivan en su compañía cuando incumplen su deber de supervisarlos. Art. 1803 del Código Civil, 31 L.P.R.A. sec. 5142.

su edad, que al momento de los hechos era de once (11) años.

Al momento del accidente los trabajos estaban paralizados porque el señor Engebretson y sus ayudantes estaban descansando.  En tales circunstancias, también es razonable que cualquier persona, fueran niños o adultos, pasaran cerca del área y, por tanto, cualquiera de ellas hubiera resultado lesionada con la caída de la escalera. Resulta poco probable que la presencia de la madre de la menor al momento del accidente evitara las lesiones sufridas por ésta.  Además, es de esperar que una niña de once (11) años goce de una mayor libertad de movimiento en las cercanías de su residencia sin que tenga que estar en todo momento acompañada de alguno de sus progenitores. El accidente del que Miriam fue víctima ocurrió exclusivamente debido a la negligencia del señor Engebretson en el desempeño de su trabajo.  En virtud de lo anterior, entendemos que actuó correctamente el foro apelativo al determinar que la señora Morales López no actuó negligentemente.

IV

Por los fundamentos antes expuestos, modificamos la sentencia emitida por el Tribunal de Circuito a los efectos de desestimar la demanda instada contra el Dr. Pedro Rullán y Royal Insurance Co. of Puerto Rico y de

revocar la imposición de honorarios de abogado a éstos y

así modificada, se confirma.


                                    MIRIAM NAVEIRA DE RODÓN
                                         Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pablo Pons Anca y otros

    Recurridos

       v.

Carl R. Engebretson                    CC-2001-274
y otros

    Peticionarios

SENTENCIA

San Juan, Puerto Rico a 30 de septiembre de 2003

    Por los fundamentos expuestos en la Opinión que antecede, se modifica la sentencia emitida por el Tribunal de Circuito de Apelaciones a los efectos de desestimar la demanda instada contra el Dr. Pedro Rullán y Royal Insurance Co. of Puerto Rico y de revocar la imposición de honorarios de abogado a éstos y así modificada, se confirma.

    Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señores Hernández Denton y Fuster Berlingeri concurren con el resultado sin opinión escrita. El Juez Asociado señor Rivera Pérez no intervino.

                Patricia Otón Olivieri
          Secretaria del Tribunal Supremo