ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MIGDALIZ SEDA VARGAS Y OTROS<br><br>Parte Recurrida<br><br>v.<br><br>ALTITUDE WEST, LLC<br><br>Parte Peticionaria | KLCE202500064 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: BY2022CV01689<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores

Rodríguez Flores, juez ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 12 de febrero de 2025.

La parte peticionaria, Altitude West, LLC (Altitude o peticionaria) solicita que revoquemos la resolución emitida y notificada el 26 de diciembre de 2024, por el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón. Mediante el referido dictamen, el TPI denegó la solicitud de reconsideración presentada por Altitude y, así, ratificó su determinación del 8 de noviembre de 2024, que declaró no ha lugar a la solicitud de sentencia sumaria promovida por la peticionaria. Ello, tras concluir que existen controversias sobre hechos medulares del caso y elementos subjetivos que deben dilucidarse en un juicio en su fondo y no mediante el mecanismo de sentencia sumaria.

De conformidad con la discreción que nos confiere la Regla 7(B)(5) de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 7(B)(5), resolvemos denegar la expedición del auto de *certiorari*, sin trámite ulterior.

**I.**

El 1 de abril de 2022, la señora Migdaliz Seda Vargas, el señor Freddy A. García Padilla, ambos por sí y en representación de su hijo Frederic J. García Seda (familia García Seda), presentó una demanda sobre daños y perjuicios. En síntesis, la familia García Seda adujo que el 12 de marzo de 2022, su hijo participó en una actividad de los estudiantes de su escuela superior en Altitude Trampoline Park. Según las alegaciones, el joven brincó en el centro del trampolín central y chocó su hombro contra el borde de metal cerca de la piscina de piezas de *foam*. Tras el incidente, el joven fue atendido por la Dra. Elizabeth Durán Pilarte, en el Manatí Medical Center, donde se le diagnosticó una fractura en la clavícula y fue operado de emergencia para colocarle una placa de metal en el hueso y 16 tornillos. En su demanda, la familia García Seda afirmó que el accidente obedeció a la operación impropia de los trampolines y la falta de supervisión de personal que allí labora. Planteó, además, que, debido a la conducta culposa de Altitude, el menor ha sufrido una incapacidad de carácter permanente, una limitación en sus movimientos y angustias mentales. Por lo anterior, la familia García Seda reclamó la cantidad de $500,000.00, por los daños físicos y angustias mentales sufridos por el joven, y $100,000.00, por las angustias mentales de sus padres.

En su contestación a la demanda, Altitude negó las alegaciones de la demanda y presentó defensas afirmativas. Alegó que sus instalaciones eran seguras para su uso. Agregó que cumplió con el estándar de cuidado requerido a establecimientos comerciales. Dedujo que no es responsable de los golpes sufridos por el joven, ya que su profesor había firmado un acuerdo mediante el cual liberó a Altitude de toda responsabilidad. Relató que el

accidente ocurrió mientras el joven pretendía brincar desde el trampolín central para caer dentro de la piscina de bolas y que este tipo de uso está prohibido, según lo establecen lo letreros ubicados alrededor del parque. De tal forma, aseguró que el suceso fue un accidente, en el que no hubo acto negligente alguno por parte de Altitude. Por ello, ésta solicitó la desestimación con perjuicio la demanda.

Posteriormente, Altitude presentó una *Moción de Sentencia Sumaria*. Aseveró que no existían controversias sobre los hechos materiales del caso. Arguyó que el joven -para describir el suceso objeto de la reclamación- en su deposición testificó que realizó un brinco que quedó corto y no pudo aterrizar en la piscina de cubos como era su plan. En específico, declaró que, a consecuencia del brinco corto, se estrelló en su hombro derecho contra una almohadilla de seguridad que recubre el marco de metal, provocando que la almohadilla se moviera e impactara contra el tubo de metal que ocasionó la fractura de su clavícula. Así, por entender que se trató de un accidente no atribuible a Altitude, ésta solicitó que se dictara sentencia sumaria a su favor desestimando con perjuicio la demanda.

En oposición, la familia García Seda alegó que Altitude es un negocio enfocado en atraer familias, que genera grandes ganancias, pero que es inherentemente peligroso, debido a los accidentes que ocurren mensualmente. Adujo que el maestro que firmó el documento para liberar de responsabilidad al establecimiento no tenía autoridad para ello, por lo que dicho documento resultaba inoficioso, además, por la ausencia de divulgación de riesgos a los padres del joven. Sostuvo que los daños causados al joven son atribuibles a Altitude y que éstos no tomaron las medidas necesarias para evitar que el joven sufriera la lesión.

Altitud presentó escrito de réplica en el que expresó que la familia García Seda no refutó los hechos propuestos en la solicitud de sentencia sumaria, sino que se limitó a proponer sus propios hechos. Por tanto, alegaron que los hechos de la solicitud de sentencia sumaria debían darse por admitidos. Adujo que, de la prueba que sustenta la referida solicitud, surgía que el accidente del joven no era atribuible a Altitude, razón por la cual procedía que se dictara sentencia sumaria a su favor.

Por su parte, en su dúplica, la familia García Seda reiteró los argumentos apuntados en su oposición a la moción de sentencia sumaria.

Evaluados los escritos de las partes y la prueba documental adjunta, el 8 de noviembre de 2024, el TPI emitió *Resolución* mediante la cual denegó la solicitud de sentencia sumaria y ordenó la continuación de los procedimientos. En su dictamen, enumeró 96 determinaciones de hechos no controvertidos y estableció otros 19 hechos en controversia a ser dirimidos en un juicio en su fondo.[1]

En el ejercicio de su discreción, el tribunal primario expresó que la prueba que acompaña las mociones de las partes no era suficiente para tener certeza sobre todos los hechos y descartar o determinar la existencia de una causa de acción por daños a favor de la familia García Seda. El tribunal concluyó que si bien no existía controversia respecto a la validez y otorgamiento del relevo de responsabilidad que firmó el maestro con relación al joven, ello "no libera a Altitude de su obligación impuesta por ley de mantener su establecimiento comercial libre de condiciones peligrosas, más allá de las inherentes a la actividad comercial a la que se dedica, ni de su obligación de no ser negligente en la operación".[2] Razonó el foro recurrido que:

---

[1] Véase *Resolución,* apéndice del recurso, págs. 1164-1186.
[2] *Íd.,* págs. 1183-1184.

> [p]ara determinar si el alcance del referido documento tiene el efecto de relevar a Altitude de los daños sufridos por el joven Frederick Padilla Seda, se requiere determinar en primera instancia, si dicha parte cumplió con su obligación de ley, de mantener las facilidades del parque de trampolines en condiciones adecuadas para que el menor no sufriera daños o si por el contrario fue negligente por la omisión de cumplir con dicha obligación. Si bien la parte demandante es la que tiene el peso de la prueba de la alegada negligencia, de los hechos incontrovertidos arriba consignados se desprende que ello tiene que ser objeto del desfile de evidencia en un juicio en su fondo. Cabe señalar que también existe controversia sobre los daños reclamados por la parte demandante, lo cual también tiene que ser objeto del desfile de prueba.[3]

Por último, el TPI puntualizó que los hechos en controversia que subsisten en el caso contienen elementos subjetivos en los que el factor credibilidad juega un papel decisivo para llegar a la verdad, lo que hacía necesario llevar a cabo un juicio en su fondo.

Luego de varios trámites procesales[4], el 4 de diciembre de 2024 Altitude solicitó la reconsideración de la resolución que denegó su solicitud de sentencia sumaria. El 26 de diciembre de 2024, el TPI dictó y notificó la resolución mediante la cual declaró sin lugar la solicitud de reconsideración.[5]

Inconforme, el 23 de enero de 2025, Altitude instó el presente recurso de *certiorari* y esgrimió el siguiente señalamiento de error:

> Erró el TPI al denegar dictar sentencia sumaria a favor de Altitude.

## II.

## A.

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior.[6]

---

[3] *Íd.,* pág. 1185.
[4] Que incluyó la presentación del recurso apelativo KLCE202401220, el decreto de paralización de los procedimientos ante el foro primario y la correspondiente sentencia emitida por este Tribunal el 20 de noviembre de 2024.
[5] Apéndice del recurso, pág. 1219.
[6] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).

Ante un recurso de *certiorari* civil, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V.[7] Ésta dispone que, el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, y por excepción a lo dispuesto anteriormente, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según dispuesto en la Regla 52.1, *supra*, al denegar la expedición de un recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1, *supra*, para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 40, se justifica nuestra intervención. Estos criterios son:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

---

[7] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.*, 202 DPR 478, 486 (2019).

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En fin, la Regla 52.1 de Procedimiento Civil, *supra*, enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari*, mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones guía la discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción.[8]

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[9] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

**B.**

El mecanismo de sentencia sumaria, regulado por la Regla 36 de Procedimiento Civil[10] permite al tribunal disponer de un caso sin celebrar vista en su fondo.[11]

---

[8] *Torres González v. Zaragosa Meléndez,* 211 DPR 821, 849 (2023).
[9] *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 97 (2008).
[10] 32 LPRA Ap. V, R. 36.
[11] *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Abrams Rivera v. E.L.A.,* 178 DPR 914, 932 (2010); *Nieves Díaz v. González Massas,* 178 DPR 820, 847 (2010); *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010).

La Regla 36.1 de Procedimiento Civil[12], establece que una moción de sentencia sumaria debe estar fundada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes.[13] Por tanto, el Tribunal podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios y admisiones ofrecidas, junto a las declaraciones juradas, si las hubiere, surge que no exista ninguna controversia real sobre los hechos materiales y esenciales del caso y solo resta por resolver una controversia de estricto derecho.[14]

En otro extremo, la sentencia sumaria resulta improcedente cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho, no proceda.[15]

La parte promovida tiene el deber de refutar los hechos alegados, con prueba que controvierta la exposición de la parte que solicita la sentencia sumaria.[16] En este sentido, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. Dicha parte está obligada a controvertir la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en

---

[12] 32 LPRA Ap. V, R. 36.1.

[13] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 335; *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018).

[14] 32 LPRA Ap. V, R. 36.3(e); *León Torres v. Rivera Lebrón,* supra; *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013); *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión,* supra, pág. 214; *González Aristud v. Hosp. Pavía,* 168 DPR 127, 137-138 (2006).

[15] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 335-336; *Mejías et al. v. Carrasquillo et al.,* supra, pág. 299; *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714 (1986).

[16] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 336; *León Torres v. Rivera Lebrón,* supra, pág. 44; *Ramos Pérez v. Univisión,* supra, pág. 215.

su solicitud, ya que, de no hacerlo, corre el riesgo de que se dicte sentencia sumaria en su contra, de proceder en derecho.[17]

Sin embargo, el hecho de que la otra parte no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica necesariamente que dicha moción procederá automáticamente si realmente existe una controversia sustancial sobre hechos esenciales y materiales.[18]

Asimismo, toda inferencia que se haga de los hechos incontrovertidos debe hacerse de la manera más favorable a la parte que se opone a la misma.[19] A tono con este principio, el Tribunal Supremo ha indicado que, "[a]l considerar la moción de sentencia sumaria se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente."[20]

En el caso de un foro apelativo, este debe utilizar los mismos criterios que el tribunal sentenciador al determinar si procede dictar sentencia sumaria, sin embargo: (1) sólo puede considerar los documentos que se presentaron ante el foro de primera instancia; y (2) sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y si el derecho se aplicó de forma correcta.[21]

Así pues, por estar en la misma posición que el foro primario al momento de revisar las solicitudes de sentencia sumaria, el Tribunal Supremo de Puerto Rico estableció un estándar específico, que, como foro apelativo, debemos utilizar. A tales efectos, en *Meléndez González, et al. v. M. Cuebas*[22], indicó que, de entrada, debemos revisar que tanto la moción de sentencia sumaria, así como

---

[17] *León Torres v. Rivera Lebrón,* supra, pág. 43.
[18] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 337.
[19] *Mejías et al. v. Carrasquillo et al.*, supra, pág. 300; *Corp. Presiding Bishop CJC of LDS v. Purcell,* supra, pág. 721.
[20] *Piñero v. A.A.A.,* 146 DPR 890, 904 (1998).
[21] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 337-338; *Const. José Carro v. Mun. Dorado,* 186 DPR 113, 129 (2012).
[22] 193 DPR 100 (2015).

su oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil.[23] Subsecuentemente, si existen hechos materiales controvertidos, "el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos".[24] Por el contrario, si encontramos que los hechos materiales del caso son incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente la norma jurídica aplicable a la controversia que tuvo ante sí.[25]

El mecanismo de sentencia sumaria es un remedio discrecional que procederá solo cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos, que no existen controversias sobre hechos materiales y esenciales, y que, por lo tanto, lo que resta es aplicar el derecho, ya que una vista en los méritos resultaría innecesaria.[26]

Hay que señalar que una sentencia sumaria, por constituir una decisión en los méritos es el precedente de cosa juzgada[27] cuando se opone entre partes debidamente relacionadas.[28] Por ello, se ha advertido que, antes de resolver una controversia por la vía sumaria, el juzgador habrá de discernir cuidadosamente al respecto, pues "mal utilizada, puede prestarse para despojar a un litigante de su 'día en corte', principio elemental del debido proceso de ley"[29].

---

[23] *Íd.*, pág. 118.
[24] *Íd.*, pág. 119.
[25] *Íd.*
[26] *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Véase, además, *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Pérez Vargas v. Office Depot*, 203 DPR 687, 699 (2019).
[27] El efecto de la aplicación de la doctrina de cosa juzgada es que la sentencia emitida en un pleito anterior impide que se litiguen posteriormente, entre las mismas partes y sobre las mismas causas de acción y cosas, las controversias ya litigadas y adjudicadas, y aquellas que se pudieron haber litigado. *Mun. De San Juan v. Bosque Real, S.E.,* 58 DPR 743, 769 (2003).
[28] *Vera v. Dr. Bravo*, supra, pág. 335.
[29] *González v. Alicea, Dir. Soc. Asist. Legal,* 132 DPR 638, 646-647 (1993).

**c.**

El Artículo 1063 del *Código Civil de Puerto Rico*, Ley Núm. 55-2020, establece que son fuentes de las obligaciones: (a) la ley; (b) los contratos;(c) los cuasicontratos;(d) los actos ilícitos;(e) los actos u omisiones en que interviene culpa o negligencia; y (f) cualquier otro acto idóneo para producirlas, de conformidad con el ordenamiento jurídico.[30] Por su parte, el Artículo 1158 del Código Civil dispone que: "[l]a persona que de cualquier modo contraviene el tenor de su obligación, debe indemnizar los daños y perjuicios causados".[31]

En cuanto a la obligación civil extracontractual, el Artículo 1536 del Código Civil[32], dispone que la persona que por culpa o negligencia cause daño a otra, viene obligado a repararlo. Para que prospere una reclamación por daños y perjuicios al amparo del referido precepto legal, se requiere la concurrencia de tres elementos, los cuales tienen que ser probados por la parte demandante: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante.[33]

Respecto al primer elemento, el Tribunal Supremo ha establecido que el concepto de la culpa "es tan infinitamente amplio como la conducta de los seres humanos e incluye cualquier falta de una persona que produce un mal o daño".[34] De igual forma, ha establecido que los conceptos de *culpa* y *negligencia* equivalen al incumplimiento con el deber de cuidado lo que, a su vez, atañe, en esencia, en no anticipar o prever las probables consecuencias de los actos que hubieran sido previstas por una persona prudente y

---

[30] 31 LPRA sec. 8984.
[31] 31 LPRA sec. 9303.
[32] 31 LPRA sec. 10801.
[33] *Nieves Díaz v. González Massas,* supra, pág. 843; *López v Porrata Doria,* 169 DPR 135, 150 (2006).
[34] *López v Porrata Doria,* supra.

razonable.[35] Sin embargo, lo anterior no exige imaginar de manera precisa la universalidad de consecuencias que pueden surgir por determinada conducta.[36] "Lo esencial es que exista un deber de prever, de forma general, las consecuencias de determinada clase".[37] A esos fines, se ha recurrido a la figura del buen padre de familia, o la persona prudente y razonable, para fines de determinar cómo debe obrar una persona de diligencia normal u ordinaria, en virtud de unas circunstancias particulares.[38]

Por tanto, si el daño causado era previsible, habrá responsabilidad; si no lo era, se considerará un evento fortuito.[39] Ahora bien, el deber de cuidado y de prever los posibles daños no se extiende a cualquier peligro inimaginable que pueda ocasionar un perjuicio, sino que más bien debe estar basado en probabilidades, no en meras posibilidades.[40]

Por otro lado, el segundo elemento requiere que entre el daño causado y el acto u omisión culposa o negligente haya un nexo causal; es decir, una causa adecuada. La teoría de la causalidad adecuada dispone que no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente la produce según la experiencia general".[41] Es decir, "un daño podrá ser considerado como el resultado probable y natural de un acto u omisión negligente si luego del suceso, al mirarlo retrospectivamente, el daño parece ser la consecuencia razonable y común de la acción u omisión".[42] Por ello, el Tribunal Supremo ha indicado que "[l]a doctrina de causalidad adecuada requiere de

---

[35] *Nieves Díaz v. González Massas,* supra, pág. 844; *López v Porrata Doria,* supra, pág. 151; *Valle v. E.L.A.*, 157 DPR 1, 18 (2002).
[36] *Pons v. Engebretson*, 160 DPR 347, 355 (2003).
[37] *Íd.*
[38] *Nieves Díaz v. González Massas,* supra, pág. 844; *López v Porrata Doria,* supra, págs. 150-151.
[39] *Pons v. Engebretson,* supra.
[40] *López v Porrata Doria,* supra, págs. 164-165.
[41] *Colón Santos v. Coop. Seg. Mult. P.R.,* 173 DPR 170, 186 (2008).
[42] *Pons v. Engebretson,* supra, págs. 355-356.

índices o criterios fundados en la experiencia y el conocimiento de causas y efectos para darle contenido".[43]

Por último, para que prospere una causa de acción por daños y perjuicios es necesario que, efectivamente, ocurra un daño. El daño constituye el menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra persona.[44] Por consiguiente, ante la inexistencia de un daño, no existe obligación de indemnizar.[45]

En nuestro ordenamiento jurídico se reconoce la existencia de dos tipos de daños: los especiales, conocidos como daños físicos, patrimoniales, pecuniarios o económicos, y los generales, conocidos como daños morales.[46]

En el contexto de establecimientos comerciales, el Tribunal Supremo ha resuelto que cuando un comerciante mantiene abierto al público un lugar, con el propósito de llevar a cabo actividades económicas para su beneficio, éste asume el deber de mantener ese espacio en condiciones óptimas de seguridad que evite que un cliente sufra daño alguno.[47] Ese deber "implica que el dueño u operador debe de ejercer un cuidado razonable para mantener la seguridad de las áreas accesibles al público, para que, de ese modo, se evite que sus clientes sufran algún daño".[48] De igual manera, "los propietarios de establecimientos comerciales son responsables por los daños ocasionados a causa de aquellas condiciones peligrosas existentes, siempre que éstas sean conocidas por los propietarios o su conocimiento le sea imputable".[49] Lo anterior no implica que el dueño de un establecimiento comercial asuma responsabilidad

---

[43] *López v Porrata Doria,* supra, págs. 166-167.
[44] *Sagardía de Jesús v. Hosp. Aux. Mutuo,* 177 DPR 484, 505 (2009).
[45] *López v Porrata Doria,* supra, pág. 151.
[46] *Nieves Díaz v. González Massas*, supra, pág. 845.
[47] *Colón y otros v. Kmart y otros*, 154 DPR 510, 518 (2001).
[48] *Íd.*
[49] *Íd.*

absoluta frente a cualquier daño recibido por un cliente en su negocio.[50] Así que, la persona que haya sufrido un daño en un establecimiento comercial debe probar que ese daño "se debió a la existencia de una condición peligrosa, que esa condición fue la que con mayor probabilidad ocasionó el daño y que ésta era conocida por el demandado, o que debió conocerla".[51] Así pues, la parte demandante tiene la obligación de poner al tribunal en condiciones de poder hacer una determinación clara y específica sobre negligencia mediante la presentación de prueba a esos efectos.

### III.

Al evaluar la petición de *certiorari,* concluimos que, aun cuando se recurre de la denegatoria de una moción de carácter dispositivo -asunto contemplado en los supuestos sujetos a revisión de la Regla 52.1 de Procedimiento Civil, *supra-* la solicitud de la parte peticionaria no cumple con ninguno de los criterios de la Regla 40 del Reglamento de este Tribunal, *supra.*

Básicamente, Altitude reitera su planteamiento de que los progenitores del joven lesionado asumieron el riesgo propio de la actividad al permitir que su hijo utilizara las instalaciones de Altitude y que el maestro encargado del joven firmara el relevo total de responsabilidad -con el efecto legal que ello conlleva- por los daños que éste pudiera sufrir en el establecimiento.

Sin embargo, más allá de argumentar su desacuerdo con la denegatoria del tribunal a resolver el pleito de forma sumaria, Altitude no ha demostrado que, al llegar a su determinación, el TPI hubiere incurrido en un error manifiesto, abuso de discreción, prejuicio o parcialidad.

---

[50] *Íd.*
[51] *Íd.,* pág. 519.

Ante ello, y siendo el mecanismo de sentencia sumaria uno discrecional, concluimos que el TPI actuó de manera razonable al denegar la solicitud de sentencia sumaria promovida por Altitude. Así pues, nos abstenemos de intervenir con el dictamen recurrido.

**IV.**

A la luz de lo expuesto, denegamos expedir el auto de *certiorari*.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La jueza Rivera Marchand disiente sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones