ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| CARMEN LYDIA DAVIS CARRASQUILLO y OTROS<br><br>Apelantes<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE CAROLINA Y OTROS<br><br>Apelados | **KLAN202300900** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de CAROLINA<br><br>Civil Núm. CA2023CV00680<br><br>Sobre:<br><br>Daños y Perjuicios |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 8 de diciembre de 2023.

Comparecen ante este foro Carmen Lydia Davis Carrasquillo, Jimmy Morales Davis y Yarimil Morales Davis (en conjunto "parte apelante"), y nos solicitan que revisemos dos sentencias parciales emitidas por el Tribunal de Primera Instancia, Sala de Carolina, las cuales fueron notificadas el 14 de agosto de 2023. En virtud de estas, el foro primario desestimó con perjuicio la *Demanda* de autos contra el Estado Libre Asociado de Puerto Rico (ELA), debido a que a falta de vigilancia y supervisión del Departamento de Recursos Naturales no fue la causa adecuada ni próxima del accidente. A su vez, declaró con lugar la solicitud de sentencia sumaria parcial presentada por el Municipio Autónomo de Carolina y Mapfre Praico Insurance Company (Municipio de Carolina), por consiguiente, ordenó el archivo de las reclamaciones en su contra.

Por los fundamentos que se exponen a continuación, **REVOCAMOS** las determinaciones apeladas.

Número Identificador

SEN2023 _____

# I.

El 7 de marzo de 2023, la parte apelante presentó una *Demanda* sobre daños y perjuicios al amparo de las disposiciones del Artículo 1536 del Código Civil de Puerto Rico, en contra del Municipio de Carolina, Mapfre Praico, el Centro Comercial Plaza Carolina, Sedgwick Claims Management Services, Inc., Sedgwick Puerto Rico, Inc., ELA y su agencia el Departamento de Recursos Naturales y Ambientales (DRNA), y el Hospital Regional UPR Dr. Federico Trilla (Hospital UPR), entre otros de nombres desconocidos (en conjunto, "los apelados").[1] El 30 de marzo de 2023, la parte apelante presentó una *Demanda Enmendada*.[2]

En esencia, alegaron que, el 22 de septiembre de 2022, aproximadamente a las 6:30 p.m., el Sr. Jimmy Morales Cruz (señor Morales) salió en bicicleta hacia el Hospital UPR por la Avenida Fragoso del Municipio de Carolina, sin embargo, el portón se encontraba cerrado. Por consiguiente, expresaron que, el señor Morales continuó su marcha dentro de los predios del estacionamiento de Plaza Carolina, rodeando el Hospital UPR. Añadieron que el estacionamiento del centro comercial carece de iluminación y de letreros que prohibiera la entrada o divulgaran sobre algún posible peligro. Según las alegaciones de la demanda, el señor Morales al llegar a la salida de la marginal que colinda con la carretera número 3, viró hacia la izquierda por un área de grama donde tampoco había mucha iluminación, ni vallas o barreras que impidieran el paso, tampoco rótulos que advirtieran sobre el peligro en dicha área.

---

[1] *Demanda*, anejo VII, págs. 36-42 del apéndice del recurso.
[2] *Demanda Enmendada*, anejo VIII, págs. 43-49 del apéndice del recurso.

Como consecuencia, el señor Morales cayó por un precipicio a una altura de aproximadamente 20 pies en el canal conocido como "Canal Blasina", provocándole la muerte.

Arguyeron que los apelados, son solidariamente responsables ante la negligencia y omisión de no mantener el área iluminada, con rótulos, barreras y/o vallas que impidieran el paso, y así evitar tragedias. Por lo tanto, sostienen que han sufrido daños entre angustias y sufrimientos mentales y morales por la pérdida del señor Morales, y estimaron los daños sufridos por la cantidad de $700,000.00.

El 2 de mayo de 2023, Sedgwick Claims Management Services Inc. y Sedgwick Puerto Rico, Inc. presentaron *Contestación a Demanda Enmendada*.[3]

De otra parte, el 20 de junio de 2023, el Municipio de Carolina presentó *Moción de Sentencia Sumaria Parcial*.[4] Mediante la cual, alegó que el lugar donde ocurrió el accidente no está bajo su jurisdicción, control, ni mantenimiento, así como tampoco el deber de brindar iluminación. Por consiguiente, solicitó que el foro primario dictara *Sentencia Parcial* desestimando la *Demanda Enmendada* en cuanto a dicho municipio y su aseguradora MAPFRE. Posteriormente, el 11 de julio de 2023, presentó *Suplemento en Apoyo de Moción de Sentencia Sumaria Parcial*.[5] En síntesis, reiteró que la Quebrada Blasina, y sus terrenos adyacentes, no son

---

[3] *Contestación a Demanda Enmendada*, anejo IX, págs. 56- 61 del apéndice del recurso. El 31 de agosto de 2023, el foro primario emitió una *Sentencia Parcial*, mediante la cual declaró "*Ha Lugar*" una solicitud de desistimiento voluntario contra dicha parte. Véase, anejo XX, pág. 124 del apéndice del recurso.
[4] *Moción de Sentencia Sumaria Parcial*, anejo XI, págs. 63-76 del apéndice del recurso.
[5] *Suplemento en Apoyo de Moción de Sentencia Sumaria Parcial*, anejo XIV, págs. 94-97 del apéndice del recurso.

propiedad de dicho municipio. Sin embargo, alegó que la responsabilidad del lugar recae sobre el DRNA.

En la misma fecha, el ELA supliendo en la capacidad jurídica de sus agencias: el Departamento de Salud y Departamento de Recursos Naturales y Ambientales, presentó una moción de desestimación.[6] Mediante esta, solicitó que se desestimara con perjuicio la *Demanda* presentada en su contra, al amparo de la Regla 10.2(5) de Procedimiento Civil. Señaló que, el Hospital UPR es una corporación pública con personalidad jurídica propia, y funciona como una entidad independiente y separada del ELA. Además, arguyó que conforme a la Ley 49-2003, según enmendada, conocida como la *Ley de Política Pública sobre la Prevención de Inundaciones en Puerto Rico, la conservación de ríos y la dedicación a uso público de fajas verdes*, el DRNA no es la entidad responsable de la quebrada conocida como "Canal Blasina".

El 5 de julio de 2023, Servicios Médicos Universitarios, Inc. contestó la demanda enmendada.[7] En síntesis, negaron que haya una relación causal entre la negligencia que se le atribuye, y los daños por los cuales reclaman. Por lo tanto, solicitó se declarara "no ha lugar" la demanda.

El 21 de julio de 2023, la parte apelante presentó su oposición a la moción de sentencia sumaria que presentó el Municipio de Carolina.[8] Manifestó que hay

---

[6] *Moción de Desestimación*, anejo XII, págs. 77-84 del apéndice del recurso.
[7] *Contestación a Demanda Enmendada*, anejo XIII, págs. 85-93 del apéndice del recurso.
[8] *Oposición a: Moción de Sentencia Sumaria parcial y a Suplemento en Apoyo de Moción de Sentencia Sumaria Parcial presentadas por la parte codemandada MAC*, anejo XV, págs. 98-108 del apéndice del recurso.

asuntos en controversia, entre ellos: determinar a quién le corresponde la titularidad del Canal Blasina; quién es la parte responsable del mantenimiento, iluminación, rotulación sobre el peligro, ubicación de vallas o barreras; entre otros. Por lo tanto, le solicitaron al foro primario que declara "no ha lugar" los escritos presentados por el Municipio de Carolina.

En la misma fecha, la parte apelante presentó *Oposición a Moción de Desestimación del ELA*.[9] En esencia, sostuvo que, la moción del ELA no fue presentada con evidencia que demostrara que la faja de terreno adyacente al Canal Blasina fuera cedida al Municipio de Carolina. A su vez, arguyeron que ambas partes codemandadas, tanto el ELA, como el Municipio están cuestionándose entre ellas la responsabilidad del lugar donde ocurrió el accidente.

Tras evaluar la postura de las partes, el 14 de agosto de 2023, el foro primario notificó la *Sentencia Parcial* apelada, mediante la cual desestimó con perjuicio la *Demanda* contra el ELA, en representación del DRNA.[10] En esencia determinó que "[d]esafortunadamente, el lugar por donde el Sr. Morales Cruz intentó acceder no es la entrada principal o secundaria para llegar al hospital. Bajo esta normativa, concluimos que, en el caso de autos, la falta de vigilancia y supervisión del Departamento de Recursos Naturales no fue la causa adecuada ni próxima del lamentable accidente."

---

[9] *Oposición a Moción de Desestimación del ELA*, anejo XVI, págs. 109-115 del apéndice del recurso.
[10] *Sentencia Parcial*, anejo III págs. 5-13 del apéndice del recurso.

A su vez, en la misma fecha notificó la segunda *Sentencia Parcial* apelada.[11] Mediante la cual consignó las siguientes determinaciones de hechos:

1. El 30 de marzo de 2023, la parte demandante presentó demanda en contra de Municipio Autónomo de Carolina, por un alegado accidente ocurrido el 22 de septiembre de 2022 en el Canal o Quebrada Blasina ubicado en la carretera PR-3 en Carolina, P.R. Alegó que mientras el fallecido Morales Davis corría bicicleta por un área verde aledaña a la Quebrada en la PR-3, cayó por un precipicio, lo cual alegadamente le causó la muerte.

2. El Municipio Autónomo de Carolina emitió una declaración jurada donde estableció que el lugar del accidente, la Quebrada Blasina y sus terrenos a ambos lados, no están bajo la jurisdicción, control ni mantenimiento de dicha municipalidad. A su vez, certificó que la responsabilidad de implementar medidas de seguridad o protección, así como instalar, corregir y brindar mantenimiento a la iluminación ubicada en la quebrada o canal y sus terrenos adyacentes no recae en municipio, toda vez que dicho lugar no es de su propiedad. Igualmente, certificó que la PR-3, también conocida como la Avenida 65 de Infantería, no está bajo su jurisdicción, control ni mantenimiento.

Así las cosas, determinó que, el lugar donde ocurrió el alegado accidente, la Quebrada Blasina, no está bajo la jurisdicción, control ni mantenimiento del Municipio de Carolina. Añadió que, "el municipio no tiene la responsabilidad de instalar, corregir y brindar mantenimiento a la iluminación ubicada en la Quebrada Blasina y sus terrenos adyacentes." Por consiguiente, declaró "con lugar" la solicitud de sentencia sumaria parcial presentada por el Municipio de Carolina, y ordenó el archivo de las reclamaciones en su contra.

Insatisfechos, el 28 de agosto de 2023, la parte apelante presentó *Moción de Reconsideración sobre*

---

[11] *Sentencia Parcial*, anejo IV págs. 14-25 del apéndice del recurso.

*Sentencia Parcial a favor del Estado Libre Asociado de Puerto Rico*.[12] Alegaron que, incidió el foro primario al dictar la *Sentencia Parcial*, puesto que, todavía existe una controversia medular en cuanto al hecho de saber quién es la parte responsable del control y mantenimiento del área donde ocurrió el accidente. Por consiguiente, insistieron en que se debía llevar a cabo un descubrimiento de prueba a estos efectos.

De igual forma, presentaron *Moción de Reconsideración sobre Sentencia Parcial a favor del Municipio Autónomo de Carolina*, en la cual reiteraron el argumento de que hay controversia sobre quién es la parte responsable del mantenimiento del área del Canal Blasina.[13] Sostuvieron que, la solicitud de sentencia sumaria era prematura, por lo que, el foro primario debió posponer la evaluación de la moción o denegarla. Así las cosas, solicitó reconsiderara la *Sentencia Parcial*.

En respuesta, el 11 de septiembre de 2023, el Municipio de Carolina presentó *Oposición a Moción de Reconsideración sobre Sentencia Parcial a favor del Municipio Autónomo de Carolina*.[14] En esta, reiteró su postura en cuanto a que la Quebrada Blasina y sus terrenos adyacentes, no son de su propiedad, pues no han sido cedidas.

Habiendo analizado los escritos de ambas partes, el 12 de septiembre de 2023, el foro primario notificó una

---

[12] *Moción de Reconsideración sobre Sentencia Parcial a favor del Estado Libre Asociado de Puerto Rico*, anejo V, págs. 26-30 del apéndice del recurso.

[13] *Moción de Reconsideración sobre Sentencia Parcial a favor del Municipio Autónomo de Carolina*, anejo VI págs. 31-35 del apéndice del recurso.

[14] *Oposición a Moción de Reconsideración sobre Sentencia Parcial a favor del Municipio Autónomo de Carolina*, anejo XXII, págs. 129-134 del apéndice del recurso.

*Resolución* declarando *No Ha Lugar* a la moción de reconsideración de la parte apelante.[15]

De otra parte, el 21 de septiembre de 2023, el ELA presentó *Oposición a Moción de Reconsideración*, mediante la cual, sostuvo que, por disposición de ley, el DRNA no es la parte responsable del Canal Blasina, ni es el titular de las fajas verdes que discurren por ésta, puesto que, éstas son cedidas al municipio con jurisdicción por el titular de ellas.[16]

El 22 de septiembre de 2023, el foro apelado notificó una *Resolución*, en la cual denegó la moción de reconsideración de la parte apelante.[17]

Aun en desacuerdo, el 11 de octubre de 2023, la parte apelante acudió ante este Foro mediante *Recurso de Apelación*. En virtud de esta, adujo que el foro primario cometió los siguientes errores:

> Primer Error: Erró el Tribunal de Primera Instancia, Sala de Carolina, al declarar Ha Lugar la Solicitud de Desestimación y desestimando la Demanda instada en contra del Estado Libre Asociado de Puerto Rico.

> Segundo Error: Erró el Tribunal de Primera Instancia, Sala de Carolina, al declarar Ha Lugar la solicitud prematura de Sentencia Sumaria Parcial desestimando la Demanda instada en contra del Municipio Autónomo de Carolina.

El 8 de noviembre de 2023, el Municipio de Carolina presentó su alegato en oposición. De igual forma, el ELA, el 21 de noviembre de 2023, presentó su *Recurso de Apelación*.

Con el beneficio de la comparecencia de las partes, procedemos a resolver el asunto ante nuestra consideración.

---

[15] *Resolución*, anejo I págs. 1-2 del apéndice del recurso.
[16] *Oposición a Moción de Reconsideración*, anejo XXIII págs. 135-140 del apéndice del recurso.
[17] *Resolución*, anejo II págs. 3-4 del apéndice del recurso.

## II.

### A.

En nuestro ordenamiento jurídico, conforme al derogado Código Civil, en su Artículo 1042, disponía que, los actos y las omisiones en los que intervenga culpa o negligencia son fuentes de obligaciones que generan responsabilidad civil extracontractual. Art. 1042 del Código Civil de 1930, 31 LPRA ant. sec. 2992. A su vez, el Artículo 1802 del Código Civil de 1930, establecía que quien que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. 31 LPRA ant. sec. 5141. Por su parte, el Artículo 1536 del Código Civil de 2020, actualmente vigente, establece que, "la persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo." 31 LPRA sec. 10801. En virtud de lo anterior, es norma firmemente establecida en nuestra jurisdicción que, para reclamar el resarcimiento por los daños y perjuicios sufridos al amparo del artículo de referencia, un demandante debe establecer: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión, el cual tiene que ser culposo o negligente. *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465 (2022).

Sobre esto último, la jurisprudencia de nuestro Tribunal Supremo ha establecido que la culpa o negligencia consiste en la falta del debido cuidado, que a su vez consiste en no anticipar o prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. Siempre tomando en

consideración que entre ese acto culposo o negligente y el daño causado se debe establecer un nexo causal adecuado. *Cruz Flores et al. v. Hosp. Ryder et al.*, supra.

Sobre el término del nexo causal adecuado o causa adecuada, es norma reiterada en nuestro ordenamiento jurídico que no es causa de toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce, según la experiencia general. *Mena Pamias v. Jimenez Melendez y otros*, 2023 TSPR 108, 212 DPR ____ (2023).

También es un principio firmemente establecido por la jurisprudencia de nuestro Tribunal Supremo, que, en el ámbito de la responsabilidad civil extracontractual, "el concepto de la culpa es tan infinitamente amplio como la conducta de los seres humanos e incluye cualquier falta de una persona que produce un mal o un daño." *López v. Porrata Doria*, 2006 169 DPR 135, 150, (2006). Por eso, los conceptos de culpa y negligencia equivalen al incumplimiento con el deber de cuidado. *Íd*. Lo que a su vez concierne, en esencia, en no anticipar o prever las probables consecuencias de los actos, que hubieran sido previstas por una persona prudente y razonable. *Íd*., pág. 151.

Ahora bien, cuando tomamos en consideración lo anterior, los tribunales no estamos obligados a imaginar de manera precisa la universalidad de consecuencias que pueden surgir por determinada conducta. *Pons v. Engebretson*, 160 DPR 347, 355, (2003). En este sentido, el Tribunal Supremo de Puerto Rico ha establecido que lo esencial es que exista un deber de prever las consecuencias. Para analizar este deber de

previsibilidad, es importante recurrir a la figura de la persona razonablemente prudente. Recurrir a esta figura es importante para fines de determinar cómo debe obrar una persona de diligencia normal u ordinaria, en virtud de unas circunstancias particulares. *López v. Porrata Doria*, supra, págs. 150-151. Por tanto, el principio cardinal para analizar esta figura de la persona razonablemente prudente es determinar si el daño causado era previsible. Si lo era, habrá responsabilidad; si no lo era, se considerará un evento fortuito. *Pons v. Engebretson*, supra.

Nuestro más Alto Foro también ha indicado que el deber de cuidado y el deber de prever los posibles daños no se extiende a cualquier peligro imaginable que pueda ocasionar un perjuicio. Más bien debe estar basado en probabilidades, no en meras posibilidades. Es decir, un daño podrá ser considerado como el resultado probable y natural de un acto u omisión negligente si luego del suceso, al mirarlo retrospectivamente, el daño parece ser la consecuencia razonable y común de la acción u omisión. *Íd.,* págs. 355-356.

**-B-**

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, atiende todo lo referente al mecanismo de sentencia sumaria. En específico, dispone que una parte podrá presentar una moción fundamentada "en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación

solicitada". Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1.

Así pues, la parte que solicite la disposición de un asunto mediante el mecanismo de sentencia sumaria deberá establecer su derecho con claridad, pero, sobre todo, deberá demostrar que no existe controversia sustancial sobre algún hecho esencial. *González Aristud v. Hosp. Pavía*, 168 DPR 127, 137-138 (2006); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

De otro lado, la parte que se oponga a que se dicte sentencia sumaria deberá controvertir la prueba presentada por la parte que la solicita, por lo que deberá cumplir con los mismos requisitos que tiene que cumplir la parte proponente. Además, su solicitud deberá contener una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos.

También, debe contener la indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal. Véase, Regla 36.3(b) de Procedimiento Civil, 32 LPRA V, R. 36.3; *Meléndez González v. M. Cuebas*, 193 DPR 100, 136 (2015); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013).

Una vez las partes cumplan con las disposiciones antes esbozadas, la precitada Regla 36 de Procedimiento Civil requiere que se dicte sentencia sumaria, solamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las

declaraciones juradas y alguna otra evidencia si las hubiere, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica. *SLG Zapata-Rivera v. J.F. Montalvo*, supra, págs. 430-434.

Por último, en *Meléndez González et al. v M. Cuebas*, supra, págs. 116-117, nuestro Tribunal Supremo amplió el estándar específico que este foro debe utilizar al momento de revisar la concesión de una solicitud de sentencia sumaria y estableció que nos encontramos en la misma posición que el foro primario para evaluar la procedencia de una sentencia sumaria. Además, quedó resuelto que nos regiremos por la Regla 36 de Procedimiento Civil, *supra*, y por los criterios de su jurisprudencia interpretativa. Al así concluir, el Tribunal Supremo resolvió que:

> Segundo, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, supra, y discutidos en *SLG Zapata-Rivera v. JF Montalvo*, supra.

> Tercero, en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

> Cuarto, y[,] por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de*

*novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Meléndez González v. M. Cuebas*, supra, págs. 118-119.

**-C-**

Una parte contra quien se haya presentado una reclamación judicial puede solicitar su desestimación cuando, de la faz de las alegaciones de la demanda, surja que alguna defensa afirmativa puede derrotar la pretensión del demandante. Véase, *Conde Cruz v. Resto Rodríguez*, 205 DPR 1043, 1077-1078 (2020); *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 701 (2012).

A tales efectos, la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, dispone lo siguiente:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
>
> (1) Falta de jurisdicción sobre la materia;
> (2) Falta de jurisdicción sobre la persona;
> (3) Insuficiencia del emplazamiento;
> (4) Insuficiencia del diligenciamiento del emplazamiento;
> (5) Dejar de exponer una reclamación que justifique la concesión de un remedio;
> (6) Dejar de acumular una parte indispensable;
>
> [...] Si en una moción en que se formula la defensa (5) se exponen materias no contenidas en la alegación impugnada, y éstas no son excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 hasta su resolución final, y todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a tal moción bajo dicha regla. Regla 10.2 de Procedimiento Civil, *supra*.

La citada regla establece los fundamentos para que una parte en un pleito pueda solicitar la desestimación de una demanda en su contra, mediante la presentación de una moción fundamentada en cualquiera de los motivos en

ella expuestos. *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 820-821 (2013); *Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920, 935 (2011). En particular, la Regla 10.2(5) de Procedimiento Civil, *supra*, dispone que el demandado puede fundamentar su solicitud en que la demanda no expone "una reclamación que justifique la concesión de un remedio." En tales casos, la desestimación solicitada se dirige a los méritos de la controversia y no a los aspectos procesales. *Montañez v. Hosp. Metropolitano*, 157 DPR 96 (2002).

En fin, la desestimación de la reclamación judicial procede cuando surja de los hechos bien alegados en la demanda que la parte demandante no tiene derecho a remedio alguno. *Torres, Torres v. Torres et al.*, 179 DPR 481, 501 (2010). Para alcanzar dicha conclusión, es necesario que el tribunal considere ciertas todas las alegaciones fácticas que hayan sido aseveradas de manera clara en la demanda. *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); *Colón v. Lotería*, 167 DPR 625, 649 (2006).

Así, el Tribunal Supremo de Puerto Rico ha expresado en diversas ocasiones que, ante una moción de desestimación, las alegaciones hechas en la demanda hay que interpretarlas conjuntamente, liberalmente y de la manera más favorable posible para la parte demandante. *Colón v. Lotería*, supra, pág. 649; *Dorante v. Wrangler of PR*, 145 DPR 408, 414 (1998).

-D-

En lo pertinente a los hechos del caso, debemos destacar la Ley Núm. 49-2003, mejor conocida como *Ley para Establecer la Política Pública sobre la Prevención de Inundaciones, Conservación de Ríos y Quebradas y la*

*Dedicación a Uso Público de Fajas Verdes en Puerto Rico*, según enmendada por la Ley Núm. 55-2004, para clarificar la política pública a seguir por las agencias ambientales del ELA.

En el Artículo 1 la Ley Núm. 49-2003, dispone que "[s]e declara política pública del Gobierno de Puerto Rico preservar los ríos y quebradas como ecosistemas que proveen múltiples beneficios." A su vez, establece que:

> El Departamento no es responsable de la limpieza y conservación de quebradas y causes de cuerpos de agua de dominio privado. No obstante, esta disposición no impedirá al Departamento llevar a cabo, en coordinación con municipios y personas privadas, obras de conservación y limpieza de quebradas o arroyos de acuerdo a un programa de trabajo sufragado por la Asamblea Legislativa o por municipios.

> Se dispone que cualquier obra de limpieza y conservación en estos cuerpos de agua deberá ser aprobada por el Departamento y deberá incluir el análisis de costos y beneficios de los impactos ambientales directos, indirectos y acumulativos ocasionados por las obras y el costo de mitigación de tales impactos.

De otra parte, el Artículo 2, en síntesis, dispone que cualquier obra de urbanización, o lotificación colindante con una quebrada, o cualquier cuerpo de agua se dedicará a uso público, en interés general de la conservación del cuerpo de agua, mediante inscripción en el Registro de Propiedad, una faja de terreno con un ancho mínimo de cinco metros lineales a ambos lados de la quebrada. Añade que, "cuando se trate una quebrada o arroyo, la faja deberá ser cedida al Municipio con jurisdicción."

## III.

En el caso de autos, la parte apelante arguye que incidió el foro primario al desestimar la demanda contra el ELA y el DRNA, como a su vez, declarar *Con Lugar* la

sentencia sumaria que presentó el Municipio de Carolina, a pesar de que habían hechos que todavía estaban en controversia. En esencia, sostienen que hay controversia sobre la titularidad, control y mantenimiento de la Quebrada Blasina. A su vez, sobre quién es la parte responsable de implementar medidas de seguridad y protección, como el instalar y brindar el mantenimiento e iluminación en la quebrada y sus terrenos adyacentes.

Por su parte, el ELA manifiesta que, conforme a la Ley Núm. 49-2003, *supra*, las obras de limpieza y conservación de las quebradas en Puerto Rico son responsabilidad de los dueños de los terrenos por los cuales discurren dichos cuerpos de agua. A su vez, menciona que la faja de terreno a ambos lados de una quebrada son cedidas al Municipio con jurisdicción. Mientras que, el Municipio de Carolina expresó, a través de una certificación jurada, que, para la fecha del alegado accidente, la faja de terreno adyacente a la quebrada Blasina no ha sido cedida a dicha municipalidad, por lo que, no es de su propiedad. De igual forma, alegan que, conforme la precitada ley, la faja de terreno debe ser inscrita a nombre del DRNA en el Registro de la Propiedad, y posteriormente, ser cedida al municipio donde se ubica. Por consiguiente, sostienen que, al no ocurrir el traspaso en este caso, dichas fajas de terreno a ambos lados de una quebrada quedaron bajo responsabilidad del DRNA.

Mediante la Ley Núm. 6 del 29 de febrero de 2000 que se creó en el Departamento de Transportación y Obras Públicas un Área de Prevención de Inundaciones y Conservación de Playas y Ríos. 12 LPRA sec. 255. Esta

Área tiene a su cargo el estudio y control de las inundaciones; la vigilancia, conservación y limpieza de las playas; el control de la extracción de arena y grava en las playas y en las orillas de los ríos; el control de la erosión de las playas; el deslinde y saneamiento de la zona marítimo-terrestre, y la vigilancia y atención de los manglares pertenecientes al ELA. 3 LPRA sec. 255(a).

Posteriormente, al promulgarse la *Ley Orgánica del Departamento de Recursos Naturales y Ambientales*, Ley Núm. 23 del 20 de junio de 1972, 3 LPRA sec. 151, *et seq.,* se le transfirieron a dicha dependencia los poderes, facultades, funciones y actividades mencionados anteriormente sobre la prevención de inundaciones que le habían sido conferidas al Secretario de Transportación y Obras Públicas. 3 LPRA sec. 156(c). De una lectura de las anteriores piezas legislativas, nos encontramos con que las obligaciones impuestas al DRNA no consideraban la obligación de dar mantenimiento a quebradas. No fue hasta el año 2003, cuando mediante la Ley Núm. 49-2003, que se enmendó la Ley Núm. 23, y aclaró la responsabilidad ministerial del DRNA en cuanto al mencionado cuerpo de agua. Conforme a la exposición de motivos, la ley tuvo el propósito de evitar pleitos frívolos contra el Estado por alegada negligencia al no llevar a cabo la limpieza de cauces de quebradas y ríos. Véase, Exposición de Motivos, de la Ley Núm. 49-2003. En específico, se esbozó que "[e]l Departamento no es responsable de la limpieza y conservación de quebradas y cauces de cuerpos de agua de dominio privado." No obstante, se mencionó que ello no impide al DRNA a que lleve a cabo en coordinación con los municipios obras de

conservación y limpieza de quebradas. A su vez, la Ley Núm. 49-2003, dispone que la faja de terreno con un ancho mínimo de cinco metros lineales en ambos lados de la quebrada será cedida al Municipio con jurisdicción.

En el caso que nos ocupa, el foro primario desestimó la *Demanda* contra el ELA, ya que, la falta de vigilancia y supervisión del DRNA no fue la causa adecuada ni próxima del accidente. A su vez, declaró *con lugar* la solicitud de sentencia sumaria del Municipio de Carolina, puesto que, el lugar donde ocurrió el alegado accidente no está bajo la jurisdicción, control, ni mantenimiento del Municipio.

No obstante, conforme a los hechos del caso, el señor Morales, al dirigirse al Hospital UPR tomando la salida de la marginal que colinda con la PR-3, hizo un viraje a la izquierda por un área de grama, donde al no haber iluminación, ni vallas o barreras, ni rótulos que prohibieran el paso o la advertencia de peligro, cayó por un precipicio, hacia el Canal Blasina o Quebrada Blasina, a una altura de aproximadamente 20 pies, provocándole la muerte.

Acorde con la legislación vigente al momento en que se suscitaron los hechos que originaron la demanda, y la prueba presentada, hay controversias sobre a que quién le corresponde dar mantenimiento a la quebrada y fajas de terreno en el Canal/Quebrada Blasina. Según la Ley Núm. 49-2003, *supra*, es política pública que el DRNA preserve los ríos y quebradas como ecosistemas que proveen múltiples beneficios. A pesar de que dicha ley establece que el DRNA no es responsable de la limpieza y conservación de quebradas, también dispone que no es impedimento para que el Departamento sí las lleve a cabo.

A su vez, dispone que cualquier obra de urbanización o cualquier lotificación colindante con una quebrada, o cualquier cuerpo de agua se dedicará a uso público, en interés general de la conservación del cuerpo de agua, mediante inscripción en el Registro de Propiedad. Deberá inscribirse una faja de terreno con un ancho mínimo de cinco metros lineales a ambos lados del cauce normal del río, arroyo o quebrada o del lecho de la laguna o lago. No obstante, si es una quebrada o arroyo, la faja deberá ser cedida al Municipio con jurisdicción.

De la prueba documental presentada por el Municipio de Carolina, ante el foro primario, certificaron que la faja de terreno adyacente a la Quebrada Blasina no era de su propiedad, pues no había sido cedida, conforme dispone la ley. De otra parte, los apelantes presentaron una declaración jurada, indicando que habían visto a funcionarios del Municipio de Carolina brindando mantenimiento en el área donde ocurrió el accidente.

Es por todo lo anterior, que procedemos a revocar la determinación del foro primario de declarar *Con Lugar* la solicitud de sentencia sumaria presentada por el Municipio de Carolina, y desestimando la *Demanda* contra el ELA. En el caso de autos, aún adoptando los hechos que determinó el foro de instancia, lo cual hacemos, surge que existe una controversial real sobre la titularidad, mantenimiento y control de la Quebrada Blasina, y sus terrenos adyacentes en la PR-3.

En cuanto a la moción para desestimar del ELA, al tomar favorablemente los hechos bien alegados de la demandada enmendada, los mismos no demuestran una clara falta de causa de acción de la parte apelante. Si bien el señor Morales estaba tratando de accesar el Hospital

por algún acceso que no era el primario o el secundario casi al anochecer, es correcto que se permita completar el descubrimiento de prueba para verificar que parte tenía algún deber provisorio y si existe relación causal con el accidente alegado en la presente causa de acción.

Conforme a lo anterior, revocamos las sentencias parciales apeladas, por lo que, se debe completar el descubrimiento de prueba, y así determinar la parte responsable de lugar del accidente.

## IV.

Por los fundamentos antes expuestos, **REVOCAMOS** las sentencias parciales apeladas y devolvemos el caso para que se continúen los procedimientos en este caso, de forma cónsona con los pronunciamientos esbozados en esta *Sentencia*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones