Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **LOALIS SYLVIA QUIÑONES PÉREZ**<br>Demandante -apelante<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE HUMACAO PUERTO RICO; **R/O RENTAL EQUIPMENT, INC.**; MAPFRE PRAICO INSURANCE COMPANY; **TRIPLE S PROPIEDAD, INC.**; COMPAÑIAS ASEGURADORAS X, Y, Z; MIGUEL A. FONTÁNEZ PÉREZ; SUS PADRES MIGUEL FONTÁNEZ Y FULANA PÉREZ DE FONTÁNEZ Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Demandados-apelados | KLAN202400679 | APELACION Procedente del Tribunal de Primera Instancia, Sala Superior de HUMACAO<br><br>Caso Núm.:<br>HU2020CV00951<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidenta la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de febrero de 2025.

Comparece la parte apelante, Loalis Quiñones Pérez, en adelante, Quiñones Pérez o apelante, mediante recurso de *Apelación*, y nos solicita la revocación de la sentencia parcial notificada por el Tribunal de Primera Instancia, Sala Superior de Humacao, en adelante TPI-Humacao, el 28 de junio de 2024. En la sentencia apelada, el Foro recurrido declaró "Ha Lugar" la solicitud de los apelados para dictar Sentencia Sumaria, presentada por R/O Rental Equipment, Inc, en adelante R/O Rental y Triple S Propiedad, Inc., en adelante Triple S.

Por estar vinculado entre sí y recurrir del mismo dictamen, el 21 de agosto de 2024 consolidamos mediante *Resolución* el recurso

de epígrafe con la *Apelación* identificada bajo el alfanumérico KLAN202400678. *Crespo Quiñones v. Santiago Velázquez,* 176 DPR 408, 416 (2009). Sin embargo, posteriormente, luego de analizar los argumentos de las partes, procedimos a desconsolidar los recursos.

Por los fundamentos que expondremos a continuación, *revocamos* el dictamen.

**I.**

Antes de adentrarnos en los asuntos procesales que desencadenaron la controversia que aquí nos ocupa, precisa que desglosemos varios hechos relevantes a las partes y la materia de autos:

1. El 21 de marzo de 2019, el Municipio Autónomo de Humacao, Puerto Rico, en adelante, Municipio de Humacao otorgó un Contrato de Obra a **R/O Rental**, para que realizara mejoras geométricas a la Avenida Boulevard Nicanor Velázquez, en adelante, la Avenida Boulevard.[1]

2. La tercera cláusula del contrato estableció que R/O Rental tenía algunas de las siguientes obligaciones:

   a. EL CONTRATISTA **supervisará y dirigirá la Obra** usando sus mejores habilidades y atención. EL CONTRATISTA **será responsable de todos los métodos, técnicas y procedimientos de construcción** (incluyendo, pero sin limitación de lo anterior, todo aquello relacionado con los sistemas de seguridad y prevención de accidentes) y de coordinar todas las fases de la Obra.[2]

   b. EL CONTRATISTA **será responsable de los actos y omisiones de sus empleados, subcontratistas y sus agentes y empleados**, y cualquier persona que lleve a cabo cualquier parte de la Obra bajo un contrato con o por orden de EL CONTRATISTA.[3]

   c. EL CONTRATISTA **proveerá a su costo y pagará por toda labor, materiales, equipo, herramientas, maquinaria y equipo de construcción, agua, energía eléctrica, transportación, teléfono y servicios**

---

[1] Apéndice del recurso KLAN202400679, pág. 203.
[2] *Id.*, pág. 204.
[3] *Id.*

**necesarios** para poder completar la Obra, sean estos temporeros o permanentes y sean incorporados o no a la Obra.[4]

3. El 26 de octubre de 2019, la apelante conducía su vehículo por la Avenida Boulevard, en dirección de este a oeste.[5]

4. Miguel Fontánez Pérez, en adelante, Fontánez Pérez, conducía por la Avenida Boulevard al mismo tiempo que la apelante, e impactó el vehículo de esta frente al Condominio Paseos del Río.[6]

5. Fontánez Pérez tenía diecinueve (19) años al momento del accidente.[7]

6. Durante ese periodo de tiempo, el Municipio de Humacao efectuaba mejoras geométricas a la Avenida Boulevard, por conducto del contratista independiente R/O Rental.[8]

7. MAPFRE Praico Insurance Company, en adelante, MAPFRE, era la aseguradora del Municipio de Humacao al momento de los hechos.[9]

8. **Triple-S Propiedad**, Inc., en adelante, Triple-S, era la aseguradora de R/O Rental al momento de los hechos.[10]

Ahora bien, establecidos los hechos que son medulares para el entendimiento del caso de marras, este tiene su génesis el 5 de octubre de 2020, cuando Quiñones Pérez presentó una *"Demanda"* ante el TPI-Humacao, contra el Municipio de Humacao, **R/O Rental**, Fontánez Pérez, sus padres y la Sociedad Legal de Gananciales compuesta por ambos.[11] En la misma, le solicitó al Foro Primario que condenara a los demandados a la indemnización solidaria de daños y perjuicios, y al pago de costas, gastos y honorarios.[12]

En su petitorio, la apelante alegó que, después de ser impactada por Fontánez Pérez, fue trasladada directamente a

---

[4] Apéndice del recurso KLAN202400679, pág. 204.
[5] SUMAC, Entrada 134.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*, pág. 1.
[12] *Id.*, pág. 5.

Centro Médico por daños sufridos que incluían golpes, contusiones y laceraciones profundas de su cuero cabelludo y cráneo.[13] Alegó que estuvo hospitalizada once (11) días en el área de trauma de Centro Médico, hasta ser dada de alta, con tratamiento de enfermeras visitantes que le atendían con curetajes constantes, y una máquina de presión negativa permanente.[14] Añadió que el accidente se debió única y exclusivamente al conductor Fontánez Pérez por conducir en exceso de velocidad, y al Municipio de Humacao y *R/O Rental por las condiciones en que estaba la Avenida Boulevard durante el proceso de mejoras geométricas.*[15] Indicó que dichas mejoras habían provocado que se limitara la anchura del carril de la Avenida Boulevard, y además, *que existía una ausencia de señales o signos aparentes que pudiese alertar a los conductores de las condiciones especiales y peligrosas de la Avenida Boulevard en ese momento.*[16]

Posteriormente, todas las partes presentaron sus respectivas contestaciones a la demanda. El 25 de noviembre de 2020, Fontánez Pérez, presentó su *"Contestación a Demanda",* y arguyó que la apelante había realizado un viraje sin tomar las debidas precauciones. También sostuvo que el Municipio de Humacao y **R/O Rental** eran responsables por las condiciones peligrosas en que se encontraba la vía de rodaje, sin iluminación, letreros ni señales de precaución.[17] Por su parte, el 18 de diciembre de 2020, **R/O Rental** contestó la *"Demanda",* y alegó no ser responsable por los hechos sucedidos.[18]

Así las cosas, el 5 de mayo de 2022, la apelante radicó una *"Demanda Enmendada"* en la que incluyó a MAPFRE y **Triple-S**

---

[13] Apéndice del recurso KLAN202400679, pág. 3.
[14] *Id.*, págs. 3-4.
[15] *Id.*, pág. 4.
[16] *Id.*
[17] *Id.*, pág. 24.
[18] *Id.*, pág. 34.

como partes demandadas en el pleito.[19] En síntesis, alegó que ambas aseguradoras respondían por los daños sufridos por la apelante, en calidad de las pólizas de seguro emitidas a favor de sus respectivos clientes. Más adelante, el 15 de julio de 2022, R/O Rental y Triple-S presentaron en conjunto su *"Contestación Enmendada a Demanda Enmendada"*.[20]

Tras el proceso de descubrimiento de prueba, el 6 de mayo de 2024, R/O Rental y Triple-S presentaron una *"Moción en Solicitud de Sentencia Sumaria"* en conjunto.[21] Mediante esta, solicitaron que se desestimara la demanda en contra de R/O Rental porque la causa directa del accidente había sido la negligencia y el choque por Fontánez Pérez. Además, arguyeron que no existía relación causal que responsabilizara a R/O Rental, ya que esta mantuvo el cumplimiento de las medidas de seguridad pertinentes en la Avenida Boulevard en todo momento. Incluso, expusieron treinta y un (31) hechos materiales que, a su juicio, no estaban en controversia, sustentándolos con la siguiente documentación:

1. Transcripción de Deposición Virtual tomada al Sr. Miguel Abner Fontánez Pérez el 27 de marzo de 2023;[22]
2. Informe de Conferencia con Antelación al Juicio;[23]
3. Informe Técnico Investigación: Choque de Dos Vehículos de Motor, presentado el 14 de noviembre de 2023;[24]
4. Informe Policiaco Querella.[25]

En respuesta, el 16 de mayo de 2024, la apelante también presentó su *"Oposición a Solicitud de Sentencia Sumaria presentada por R/O Rental"*.[26] Mediante esta, la apelante admitió todos los hechos propuestos por el R/O Rental, excepto los siguientes:[27]

---

[19] Apéndice del recurso KLAN202400679, pág. 40.
[20] *Id.*, pág. 63.
[21] *Id.*, pág. 169.
[22] *Id.*, pág. 99.
[23] SUMAC entrada 134.
[24] Apéndice del recurso KLAN202400679, pág. 115.
[25] *Id.*, pág. 153.
[26] *Id.*, pág. 300.
[27] *Id.*, págs. 301-305.

2. Fontánez Pérez, estaba familiarizado con el Boulevard Nicanor Vázquez y con los trabajos de construcción que se estaban llevando a cabo en la vía ya que anteriormente había viajado por esa ruta para visitar a su novia en Humacao.

6. Pero Fontánez Pérez sabía que podían venir carros en sentido contrario.

7. Fontánez Pérez admite que había transitado antes por esa vía, sabía que podía venir autos en sentido contrario, pero comoquiera rebasó la línea de autos a su derecha y con ello, impactó el auto de la parte demandante.

9. El vehículo de la Sra. Loalis S. Quiñones Pérez no tenía la señal de virar encendida.

17. El choque bajo estudio fue causado por Fontánez Pérez al pasar por la izquierda a los vehículos detenidos en la intersección.

19. Los informes de inspección, minutas y fotografías tomadas durante el progreso de las obras de construcción de las mejoras geométricas al Boulevard Nicanor Vázquez permiten concluir que se estaba cumpliendo con la implementación del control temporero de tránsito, según presentado en los planos que formaban parte de los documentos de contrato.

20. Tanto Fontánez Pérez como Quiñones estaban familiarizados con la carretera y las obras de construcción que se estaban llevando a cabo en el Boulevard Nicanor Vázquez.

21. Fontánez Pérez acepta que se declaró culpable por manejar a exceso de velocidad al momento de ocurrir el choque y no tuvo nada que ver con la localización del carril.

En síntesis, la apelante sostuvo que, debido a la naturaleza del proyecto, era necesario que se elaborara un plan de mantenimiento de tráfico para supervisar e inspeccionar a R/O Rental.[28] A su vez, indicó que se identificaron condiciones peligrosas

---

[28] Apéndice del recurso KLAN202400679, pág. 305.

que no fueron atendidas, y que R/O Rental pudo haber detenido las obras hasta que se corrigieran.[29] Añadió que R/O Rental fue negligente al no implementar el plan de mantenimiento de tráfico que incluía tomar medidas de seguridad y efectuar inspecciones nocturnas.[30] Adujo que el área del accidente carecía de rotulación anunciando que era un área de construcción, marcas en la carretera que delimitaran los carriles, y buena iluminación.[31] Además, planteó que, el día de los hechos, R/O Rental cerró un carril de manera súbita y sin advertencias, creando confusión en los conductores.[32] También indicó que el informe pericial presentado por R/O Rental era inadmisible por falta de autenticación.[33] Así las cosas, la apelante solicitó al TPI-Humacao que declarara "No Ha Lugar" a la solicitud de sentencia sumaria presentada por R/O Rental y Triple-S por entender que existían controversias de hechos que requerían una vista evidenciaria para su adjudicación.[34]

Posterior a esta súplica de la apelante, el TPI-Humacao concluyó que no era necesario celebrar una vista en su fondo, y emitió una *"Sentencia Parcial"* el 27 de junio de 2024. Mediante este dictamen, el Foro Primario declaró "Ha Lugar" la *"Moción en Solicitud de Sentencia Sumaria"* presentada por R/O Rental y su aseguradora Triple-S.[35] Así, desestimó la demanda presentada en contra de ambas partes, por resolver que los daños sufridos por la apelante fueron directa y exclusivamente causados por las acciones y negligencia de Fontánez Pérez, y determinar una falta de relación causal en cuanto a las actuaciones de R/O Rental. En específico, el TPI-Humacao resolvió que R/O Rental cumplió en la rotulación y las

---

[29] Apéndice del recurso KLAN202400679, pág. 305.
[30] *Id.*, pág. 312.
[31] *Id.*, págs. 306-307.
[32] *Id.*, pág. 307.
[33] *Id.*
[34] *Id.*, págs. 312-313.
[35] *Id.*, pág. 549.

medidas de seguridad, según fueron establecidas, y desestimó la demanda en su contra y contra su aseguradora.

Inconforme con el proceder del Foro Primario, la apelante recurrió ante esta Curia mediante recurso de *"Apelación Civil"*. Este fue presentado el 16 de julio de 2024, y le imputa al TPI-Humacao los siguientes señalamientos de error:

> **PRIMER SEÑALAMIENTO DE ERROR**: [determinaciones 2, 6, 7 y 16) erró el TPI al concluir que el Sr. Fontánez Pérez y la Sra. Quiñones Pérez estaban familiarizados con el Boulevard Nicanor Vázquez y con los trabajos de construcción que se estaban llevando a cabo en la vía, puesto que anteriormente había viajado por esa ruta para visitar a su novia en Humacao. Existe controversia de hechos, ya que la prueba establece que el área de construcción era una confusa, cambiaba constantemente y no existían al momento de los hechos rotulación adecuada.

> **SEGUNDO SEÑALAMIENTO DE ERROR**: [determinación 8] erró el TPI al concluir que la Sra. Lolis S. Quiñones Pérez no tenía la señal de virar encendida. Existe controversia de hecho, la Sra. Quiñones Pérez testificó que encendió la señal.

> **TERCER SEÑALAMIENTO DE ERROR**: erró [determinación 15] el TPI al concluir que los informes, minutas y fotografías tomadas durante el progreso de las obras de construcción de las mejoras geométricas al Boulevard Nicanor Cázquez Permiten concluir que se estaba cumpliendo con la implementación del control temporero de tránsito, según presentado en los planos que formaban parte del contrato. Existe controversia de hechos, debido a que la prueba testifical estableció que no había rotulación en el área del accidente y la prueba pericial de la parte demandante señala que las medidas tomadas no eran adecuadas.

> **CUARTO SEÑALAMIENTO DE ERROR**: erró el TPI al ignorar las controversias de hechos y resolver la solicitud de sentencia sumaria a base de credibilidad, cuando existen evidentes controversias de hechos sobre la adecuacidad de las medidas de seguridad tomadas, lo que impide que se dicte sentencia sumaria.

Tras varios trámites procesales, los apelados presentaron su oposición al escrito de apelación. Con el beneficio de la comparecencia de todas las partes y perfeccionado el recurso, procedemos a expresarnos.

## II.

### A. Apelación Civil

Las Reglas de Procedimiento Civil, supra, se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio, entiéndase las alegaciones, mociones, descubrimiento, vista evidenciaria, sentencia, reconsideración, *apelación*, y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La etapa de la *apelación* se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel que se presenta ante un foro de mayor jerarquía cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Foro de Primera Instancia. *Freire Ruiz del Val v. Morales Román*, 2024 TSPR 129, 214 DPR ___ (2024); Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA, Ap. VIII, R. 52; *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019). Véase, R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho Procesal Civil, 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de *certiorari*. Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241,

252 (1997). En ese sentido, se reconoce que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones, cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Freire Ruiz de Val v. Morales Román*, supra; *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017). Regla 13(A) del Reglamento del Tribunal de Apelaciones 4 LPRA Ap. XXII-B, R. 13(A).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *Bathia Gautier v. Gobernador*, 199 DPR 59, 182 (2017); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

### B. Sentencia Sumaria

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Cruz, López v. Casa Bella y otros,* 2024 TSPR 47, 213 DPR ___ (2024); *Birriel Colón v. Econo y otro,* 2023 TSPR 120, 213 DPR ___ (2023); *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *Oriental Bank v. Caballero García*, 212 DPR 671, 678 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 610 (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR

335, 350 (2023); *Universal Ins. y otros v. ELA y otros*, 211 DPR 455, 471 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *BPPR v. Zorrilla Posada y otro,* 2024 TSPR 62, 213 DPR ___ (2024); *Cruz, López v. Casa Bella y otros,* supra; *Oriental Bank v. Caballero García,* supra, pág. 678; *Segarra Rivera v. Int'l. Shipping et al.,* supra, pág. 980. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. Reglas 36.1 y 36.2 de Procedimiento Civil, supra.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.,* supra, pág. 979; *Ramos Pérez v. Univisión,* 178 DPR 200, 214 (2010). Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Id.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales

y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3 de Procedimiento Civil, supra; *Oriental Bank v. Caballero García,* supra, pág. 679; *Pérez Vargas v. Office Depot,* 203 DPR 687, 698 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *BPPR v. Zorrilla Posada y otro,* supra; *León Torres v. Rivera Lebrón,* supra, pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Id.* Es decir, el hecho de no oponer a un petitorio sumario no implica que este necesariamente proceda, sin embargo, si no se demuestra que existen controversias sustanciales sobre los hechos materiales, nada impide al foro sentenciador de dictar sentencia sumaria. *Ramos Pérez v. Univisión,* supra, pág. 215.

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden

que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra, pág. 44. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil, supra. *Id.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Id.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, supra, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole,* 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *E.L.A. v. Cole*, supra, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá *cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. Cruz, López v. Casa Bella y otros,* supra; *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Además, existen casos que no se deben

resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens,* 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Id.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otros v. ELA y otros,* supra, pág. 472.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.
> *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, "nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria". *BPPR v. Zorrilla Posada y otro, supra; Cruz, López v. Casa Bella y otros,* supra; *González Santiago v. Baxter Healthcare,* 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo,* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia interpretativa. De esta manera, si entendemos que

los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho.

### C. Contratista Independiente

En nuestro ordenamiento laboral, *el contratista independiente* es aquel que "dada la naturaleza de su función y la forma en que presta servicios, resulta ser su propio patrono". *Whittenburg v. Col. Ntra. Sra. Del Carmen*, 182 DPR 937, 952 (2011); Farinacci Fernós, *Interpretación Liberal: Presunciones Probatorias en la Legislación Protectora del Trabajo*, 83 Rev. Jur. UPR 15, 28 (2014).

Para distinguir entre un empleado y *un contratista independiente*, el título utilizado por las partes no es concluyente, ni tampoco lo es lo estipulado en el contrato al momento de definir la relación entre las partes. Farinacci Fernós, op. cit., pág. 28; *Vélez Arroyo v. HPM Foundation et al.*, 211 DPR 716, 729 (2023). Por tanto, los tribunales debemos "ponderar las circunstancias en las que se lleva a cabo el trabajo". Id.

Según el Art. 2.3 de la Ley de Transformación y Flexibilidad Laboral, Ley Núm. 4 del 26 de enero de 2017, 29 LPRA sec. 122b:

> Existirá una presunción incontrovertible de que una persona *es contratista independiente* si:
> a) posee o ha solicitado un número de identificación patronal o número de seguro social patronal;
> b) ha radicado planillas de contribuciones sobre ingresos reclamando tener negocio propio;
> c) *la relación se ha establecido mediante contrato escrito*;
> d) se le ha requerido contractualmente tener las licencias o permisos requeridos por el gobierno para operar su negocio y cualquier licencia u autorización requerida por ley para prestar los servicios acordados; y
> e) cumple con tres (3) o más de los siguientes criterios:
>     1) *Mantiene control y discreción sobre la manera en que realizará los trabajos acordados*, excepto por el ejercicio del control necesario por parte del principal para asegurar el cumplimiento con cualquier obligación legal o contractual.

2) Mantiene control sobre el momento en que se realizará el trabajo acordado, a menos que exista un acuerdo con el principal sobre el itinerario para completar los trabajos acordados, parámetros sobre los horarios para realizar los trabajos, y en los casos de adiestramiento, el momento en que el adiestramiento se realizará.

3) No se le requiere trabajar de manera exclusiva para el principal, a menos que alguna ley prohíba que preste servicios a más de un principal o el acuerdo de exclusividad es por un tiempo limitado;

4) *Tiene libertad para contratar empleados para asistir en la prestación de los servicios acordados*;

5) *Ha realizado una inversión en su negocio para prestar los servicios acordados*, incluyendo entre otros:

    i. la compra o alquiler de herramientas, equipo o materiales;

    ii. la obtención de una licencia o permiso del principal para acceder al lugar de trabajo del principal para realizar el trabajo acordado; y

    iii. alquilar un espacio o equipo de trabajo del principal para poder realizar el trabajo acordado.

[…]

(Énfasis suplido)

Aunque una persona no cumpla con los requisitos anteriores para que exista dicha presunción incontrovertible, nuestro Tribunal Supremo ha identificado una serie de características para determinar si la persona es un *contratista independiente* bona fide. Estos son:

1) naturaleza, extensión y grado de control que ejerce el patrono sobre la persona en la ejecución de la obra o trabajo;

2) grado de juicio o iniciativa que despliega la persona;

3) forma de compensación;

4) facultad de emplear y derecho a despedir obreros;

5) oportunidad de incurrir en ganancias y el riesgo de pérdidas;

6) la titularidad del equipo y de las instalaciones físicas provistas por el principal;

7) retención de contribuciones;

8) si como cuestión de realidad económica la persona que presta el servicio depende de la empresa para la cual trabaja;

9) permanencia de la relación del trabajo, y

10) si los servicios prestados son una parte integral del negocio del principal o se pueden considerar como un negocio separado o independiente por sí mismos.

*Vélez Arroyo v. HPM Foundation et al.*, supra, pág. 730; *Whittenburg v. Col. Ntra. Sra. del Carmen*, supra, págs. 952-953; *SLG Hernández-Beltrán v. TOLIC*, 151 DPR 754, 768 (2000); *Fernández v. ATPR*, 104 DPR 464, 465 (1975).

Al realizar este análisis, la jurisprudencia ha establecido que lo determinante es el criterio del *grado de control que tiene la persona contratada para llevar a cabo su encomienda de manera verdaderamente independiente,* en contraposición al control que tiene la persona que contrata y se beneficia de sus servicios. *SLG Hernández-Beltrán v. TOLIC*, supra, pág. 768.

En cuanto a los demás criterios, se deberá considerar la totalidad de las circunstancias en cada caso y realizar un análisis integrado de los criterios, ya que se ha establecido que "no necesariamente será suficiente con que se cumpla uno de los criterios, como tampoco es necesario que se cumplan todos". *Romero v. Cabrera Roig*, 191 DPR 643, 660-661 (2014).

### i. Negligencia de un contratista independiente

La responsabilidad impuesta a un empleador por los daños ocasionados por un *contratista independiente* constituye una excepción a la norma a los efectos de que la obligación de reparar daños generalmente emana de un hecho propio. *Pons v. Engebretson*, 160 DPR 347, 356 (2003). Sin embargo, la condición de contratista independiente, por sí sola, no releva al principal que lo emplea de responder por los daños que este haya causado. *Pons*

*v. Engebretson*, supra; *López v. Cruz Ruiz*, 131 DPR 694, 704 (1992).

En *Martínez v. Chase Manhattan Bank*, 108 DPR 515, 521-523 (1979), nuestro Tribunal Supremo expuso que:

> El empleador del contratista no responde por la negligencia corriente de éste que resulte en daño para tercera persona, ni por su inobservancia de precauciones de rutina que un contratista cuidadoso debe usualmente tomar. La responsabilidad del empleador gira en torno a 'riesgos especiales, peculiares al trabajo que deba realizarse y que surgen de su naturaleza o del sitio donde deba realizarse, contra los cuales un hombre razonable reconocería la necesidad de tomar precauciones especiales.... Peculiar no quiere decir que sea un riesgo anormal en ese tipo de labor o que ha de ser un riesgo anormalmente grande. Se refiere sólo a un peligro especial y conocible que se da en esa clase de trabajo'.
> (Énfasis suplido y citas omitidas.)

Al interpretar la norma antes citada, el Tribunal Supremo señaló que el empleador solamente responderá por su propia culpa o negligencia en aquellos casos en que deje de tomar medidas de precaución especiales en atención a los riesgos particulares de una obra y tal omisión provoque daños a terceras personas, siempre que los daños hayan sido previsibles para el empleador. *López v. Cruz Ruiz,* supra, pág. 706. Es decir, el empleador no debe responder por la negligencia del contratista cuando ésta consista en omitir las medidas de cuidado rutinarias para llevar a cabo la labor que le ha sido encomendada, ni cuando esta falta de cuidado no sea previsible para el principal. *Pons v. Engebretson*, supra, pág. 357.

A su vez, cuando se trate de una obra que por su naturaleza implique riesgos particulares, *el empleador será responsable por la negligencia del contratista si omite exigirle en el contrato tomar las medidas de seguridad especiales que sean necesarias* o, en caso de no incluirlas en el contrato, si el empleador no ejerce la debida diligencia para tomar por sí mismo tales medidas de alguna forma.

*Pons v. Engebretson*, supra, pág. 358. No obstante, *el empleador no debe responder por la negligencia del contratista independiente cuando ejerza la debida diligencia para asegurarse que la persona contratada cuenta con las destrezas y experiencia suficientes para llevar a cabo el trabajo*, y tomar las medidas de precaución necesarias para evitar los riesgos que pueda ocasionar la obra. *Id.*

**III.**

Quiñones Pérez recurre ante nos, haciendo *cuatro (4) señalamientos de error*, mediante su recurso de *apelación*. Nos solicita que revoquemos la *Sentencia Parcial*, mediante la cual se desestimó el caso a favor de **R/O Rental y Triple-S**.

En su *primer señalamiento de error*, la apelante arguye que el TPI-Humacao erró al concluir que ella y Fontánez Pérez estaban familiarizados con la Avenida Boulevard y con los trabajos de construcción que se estaban llevando a cabo en la vía. Justipreciamos que *no le asiste la razón*.

Primeramente, el joven Fontánez Pérez declaró en su deposición que suele viajar por la ruta donde ocurrió el accidente, entre cuatro a seis veces a la semana, y tenía conocimiento de la construcción que se estaba llevando a cabo.[36] Indicó que toma esta ruta cuando sale de la casa de sus padres para la casa de su novia.[37] En específico, mencionó que el día del accidente, cuando llegó a la Avenida Boulevard, vio una fila de carros y procedió a pasarles por el lado izquierdo, hasta impactar a la apelante, mientras esta giraba a la izquierda para entrar al complejo Condominio Paseo del Río.[38] Además, admitió haber rebasado la línea de carros, guiando en

---

[36] Apéndice del recurso KLAN202400679, págs. 102-103.
[37] *Id.*, pág. 100.
[38] *Id.*, págs. 100-101.

exceso de velocidad, sabiendo que más adelante se encontraba la entrada al condominio.[39]

Por su parte, la apelante declaró que transita la zona donde ocurrió el accidente a diario porque vive allí.[40] Admitió estar consciente de los arreglos que se estaban haciendo en la carretera, y que la escena causaba la impresión de que habían trabajos sin culminar.[41] Además, indicó haber sido impactada cuando se paró frente al Condominio para virar a la izquierda.[42]

Así las cosas, *estamos obligados a coincidir con el Foro apelado en cuanto al primer señalamiento de error* de la apelante. Tanto Fontánez Pérez como la apelante admitieron conducir por la ruta en cuestión regularmente, y conocer sobre los trabajos de construcción que se estaban realizando. Como mínimo, ambas partes estaban lo suficientemente familiarizados con las circunstancias del área para ejercer un mayor grado de cuidado al momento de transitar por la Avenida Boulevard.

En el *segundo error* de ambos recursos, la apelante arguye que el TPI-Humacao erró al concluir que ella no tenía la señal de virar encendida. Por entender que este no es un hecho material que incide en la determinación de responsabilidad que pueda tener R/O Rental Equipment y su aseguradora, justipreciamos que *no le asiste la razón* a la apelante. Es decir, el hecho de que la apelante tuviese o no encendida la señal de virar, no influye en la decisión del TPI-Humacao al resolver "Ha Lugar" a la sentencia sumaria.

Por estar estrechamente relacionados entre sí, atenderemos el tercer y cuarto señalamiento de error en conjunto. En el *tercer señalamiento de error*, la apelante arguye que el TPI-Humacao erró al concluir que los informes, minutas y fotografías tomadas durante

---

[39] Apéndice del recurso KLAN202400679, págs. 105-108.
[40] *Id.*, pág. 286.
[41] *Id.*, pág. 287.
[42] *Id.*, págs. 514-517.

el progreso de las obras de construcción eran suficiente para concluir que se estaba cumpliendo con la implementación del control temporero de tránsito, ya que la prueba testifical estableció que no había rotulación en el área del accidente que las medidas tomadas no eran adecuadas. A su vez, en el *cuarto señalamiento de error*, la apelante arguye que el TPI-Humacao erró al resolver la solicitud de sentencia sumaria a base de credibilidad, habiendo controversias de hechos sobre la adecuacidad de las medidas de seguridad tomadas. Justipreciamos que *le asiste la razón.*

Sabido es que, mediante el contrato de obra ante nuestra consideración, el Municipio de Humacao le otorgó a R/O Rental la obligación de cumplir el proyecto de mejoras geométricas de la Avenida Boulevard. R/O Rental fue denominado como "*contratista*", y *se le adjudicó la obligación de supervisar y dirigir la obra* utilizando los métodos, técnicas y procedimientos de construcción, que entendiera pertinentes. Además, *se le concedió la potestad de contratar personal* para asistir en la prestación de los servicios acordados, y *asumir responsabilidad por sus actos y omisiones.* A su vez, R/O Rental estaría *encargada de pagar por materiales, equipo y todo servicio o utilidad necesaria* para completar la obra. Tras realizar una evaluación del contrato y las circunstancias en las que se llevó a cabo el trabajo, *no cabe duda que R/O Rental actuó como contratista independiente.*

Así las cosas, el TPI-Humacao indicó que, surge de la evidencia presentada que el accidente fue causado directa y exclusivamente por las acciones y negligencia de Fontánez Pérez. En específico, sostuvo que R/O Rental cumplió en la rotulación y las medidas de seguridad, según fueron establecidas en los planos de construcción y diseño del movimiento de tráfico. A su vez, planteó que estas se mantuvieron durante el tiempo que estuvo la

construcción de la obra. Sin embargo, *no podemos acoger la determinación del Foro apelado.*

Según surge del expediente en el caso de epígrafe, la Apelante contrató a un perito que preparó un informe pericial con el propósito de evaluar el accidente en cuestión.[43] Entre los documentos evaluados, el perito analizó fotos del proyecto. Concluyó que las fotos tomadas antes del accidente reflejaban la falta de implementación adecuada del plan de mantenimiento de tráfico, mientras que las fotos tomadas después del accidente reflejaban un pequeño grado de mejoría en dicha implementación.[44] Además, indicó que no se incorporaron las inspecciones periódicas nocturnas, la prevención de derrames, y la falta de personas capacitadas para implementar el mencionado plan.[45] Por tanto, sostuvo que el accidente ocurrió por la falta de manejo del plan, ya que este requería que se colocaran señales antes de abrir al tráfico cualquier nuevo desvío o ruta temporera, y no se hizo.[46]

Por su parte, **Triple-S** contrató a Klein Engineering, PSC, para también preparar un informe pericial.[47] El objetivo del Informe Técnico preparado por Klein Engineering fue analizar la implementación del control temporero de tránsito al momento que ocurrió el choque objeto de controversia.[48] Según este informe, al momento en que ocurrió el accidente, la visión en la carretera no estaba obstruida, la visibilidad era oscura, el pavimento estaba seco, y el clima estaba claro.[49] A su vez, el informe establece que las mejoras a la Avenida Boulevard fueron realizadas por segmentos, que todos los trabajadores contaban con sus respectivos equipos de

---

[43] Apéndice del recurso KLAN202400679, pág. 241.
[44] *Id.*, pág. 251.
[45] *Id.*
[46] *Id.*, pág. 271
[47] *Id.*, pág. 472.
[48] *Id.*, pág. 482.
[49] *Id.*, pág. 495.

seguridad, y que había otro contratista trabajando con líneas de telecomunicaciones en el área.[50] Además, según los informes diarios de inspección, los trabajos frente al Condominio Paseo del Río se llevaron a cabo el 2 de octubre de 2019, y siguieron progresando en dirección de oeste a este.[51] Según el informe, el día antes del accidente, las fotografías del informe demuestran el uso de drones de control de tránsito, al igual que una acera y encintado bajo construcción.[52] Por tanto, concluyó que R/O Rental cumplió con la implementación del control temporero de tránsito, según presentado en los planos que formaron parte del contrato de obra.[53]

A pesar de que el TPI-Humacao determinó que los informes, minutas y fotografías tomadas durante el progreso de las obras de construcción eran suficiente para concluir que R/O Rental estaba cumpliendo con la implementación del plan de mantenimiento de tráfico y las medidas de seguridad pertinentes, un análisis de la prueba pericial presentada por ambas partes *nos obliga a concluir que existen controversias de hechos en el caso de epígrafe*. En específico, no podemos confirmar la desestimación del Foro Primario, basada en su determinación que la prueba que obra en el expediente sostiene que la causa directa del accidente surge por la negligencia de Fontánez Pérez, y que R/O Rental implementó las medidas de seguridad correctas. Para establecer la certeza del referido dictamen, *resulta forzosa la celebración de un juicio en su fondo*, puesto que, según detallado, existen dos opiniones opuestas en cuanto a la suficiencia de las medidas de seguridad implementadas por R/O Rental.

---

[50] Apéndice del recurso KLAN202400679, pág. 497.
[51] *Id.*
[52] *Id.*, pág. 498.
[53] *Id.*, pág. 507.

**IV.**

*Por los fundamentos que anteceden, revocamos el dictamen del Foro Apelado.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Juez Grana Martínez concurre sin opinión escrita.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones